FILED

NOV - 5 2020

CLERK U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY _____ DEPUTY

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA

GREGORIO FERNANDEZ-PEREZ,

Movant,

v.

UNITED STATES OF AMERICA,

Respondent.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

Case No.: 3:19-cv-00127-BEN
3:16-cr-01294-BEN

**ORDER DENYING:**

**(1) MOTION TO VACATE, SET ASIDE, OR CORRECT A SENTENCE UNDER 28 U.S.C. § 2255**

**(2) MOTION TO REDUCE SENTENCE PURSUANT TO 18 U.S.C. § 3582(c)(1)(A)(i)**

**[3:19-cv-00127-BEN:** ECF No. 1;
**3:16-cr-01294-BEN:** ECF Nos. 54, 56, 59]

## I.    INTRODUCTION

Before the Court are the motions of Gregorio Fernandez-Perez ("Petitioner") proceeding *pro se*,[1] to (1) vacate, set aside, or correct his sentence pursuant to 28 U.S.C. §

---

[1]    In reviewing Movant's motion, the Court is mindful that "[a] document filed *pro se* is to be liberally construed ... and a *pro se* [pleading], however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (internal quotation marks and citation omitted).

2255, ECF. No. 56,[2] and (2) issue a Compassionate Release Order pursuant to 18 U.S.C. 3582(c)(1)(A), ECF No. 59. While the Court did not set a briefing schedule for Petitioner's motion pursuant to 28 U.S.C. § 2255, and as such, the Government did not file a response to that motion, the Government opposed Petitioner's Motion for a Compassionate Release Order, ECF No. 60, 62. For the reasons discussed below, the Court denies Petitioner's motions.

## II.   BACKGROUND

### A.   Statement of Facts

Between July 7, 2015 and August 10, 2015, Homeland Security Investigations ("HSI") identified Petitioner's computer as sharing extremely graphic child pornography files. ECF No. 1 at 3[3]:1-13.

On October 29, 2015, HSI executed a federal search warrant at Petitioner's residence, which resulted in seizure of multiple computers, a laptop, and electronic media. ECF No. 1 at 4:10-15. When the agents arrived to execute the search warrant, Petitioner was nude, and his two minor daughters, ages 5 and 6, were in pajamas. ECF No. 39 at 4, ¶ 8. A forensic analysis confirmed that the laptop seized was positive for child pornography, identifying 63 videos and 14 images of child pornography. ECF No. 1 at 4:13-21. The laptop had been seized from a separate pool house occupied and controlled solely by Petitioner and his two minor daughters. ECF No. 1 at 8:9-19. After being *Mirandized*, Petitioner also admitted he owned the laptop. *Id.*

On March 24, 2016, Magistrate Judge Mitchell Dembin signed a warrant for Petitioner's Arrest. ECF No. 2. On May 12, 2016, just after midnight, Petitioner was arrested at the port of entry in San Diego as he crossed the border from Mexico. ECF No. 39 at 6, ¶ 17.

---

[2]   All ECF. No. references are to Petitioner's criminal case, 3:16-cr-01294-BEN, unless otherwise noted. Any docket citations in this civil case will be by the letters "CV" before the ECF number.

[3]   Unless otherwise indicated, all page number references are to the ECF generated page number contained in the header of each ECF-filed document.

1   Defendant was ultimately sentenced to 78 months of imprisonment and 10 years of
2   supervised release.  Judgment, ECF No. 48.  According to the Federal Bureau of Prisons
3   inmate located, Petitioner is 38 years old, currently in custody at Englewood Federal
4   Correctional Institution ("FCI"), has served 46 months of his sentence, and is scheduled
5   for release on June 15, 2022.  *See* https://www.bop.gov/inmateloc/.

6   **B.    Procedural History**

7   On March 24, 2016, Respondent, the United States of America (the "Government"),
8   filed a complaint against Petitioner for (1) distribution of images of minors engaged in
9   sexually explicit conduct, 18 U.S.C. § 2252(a)(2), and (2) possession of images of minors
10  engaged in sexually explicit conduct, 18 U.S.C. § 2252(a)(4)(B).  ECF No. 1.

11  On June 7, 2016, Petitioner waived his right to prosecution by indictment and
12  consented to prosecution by information.  ECF No. 18.  Accordingly, that same day, a two-
13  count Information was filed, charging Petitioner with (1) distribution of images of minors
14  engaged in sexually explicit conduct (Count One), and (2) possession of images of minors
15  engaged in sexually explicit conduct (Count Two).  ECF. No. 17.

16  On August 18, 2016, Petitioner consented to entering a Rule 11 plea.  ECF No. 31.
17  That same day, August 18, 2016, Petitioner signed a written plea agreement, pursuant to
18  which he agreed to plead guilty as to Count 2 of the information, which charged Petitioner
19  with possession of child pornography, in exchange for the Government's agreement not to
20  (1) prosecute additional charges (e.g., under Count 1) and/or (2) seek any other upward
21  adjustments or departures unless Petitioner breaches the agreement (the "Plea
22  Agreement").  ECF. No. 32 at 1:21-2:4.  As part of the Plea Agreement, Petitioner
23  represented that he "had a fully opportunity to discuss all the facts and circumstances of
24  this case with defense counsel and has a clear understanding of the charges and the
25  consequences of this plea."  *Id.* at 7:5-8.  This Plea Agreement was signed by Petitioner on
26  August 18, 2016.  *Id.* at 16.  As part of the Plea Agreement, Defendant also represented
27  that he "has consulted with counsel and is satisfied with counsel's representation."  *Id.* at
28  15:15-19.

-3-

1     The Plea Agreement also contained a provision pursuant to which he waived "to the
2  full extent of the law, any right to appeal or to collaterally attack the conviction . . . or
3  sentence, except a post-conviction collateral attacked based on a claim of ineffective
4  assistance of counsel, unless the Court imposes a custodial sentence above the high end of
5  the guideline range (which if USSG 5G1.1(b) applies, will be the statutorily required
6  mandatory minimum sentence) recommended by the Government pursuant to this
7  agreement at the time of sentencing." ECF No. 32 at 12:28-13:11. It also cautioned as to
8  the ramifications of violating this waiver, providing that "[i]f at any time defendant files a
9  notice of appeal, appeals or collaterally attacks the conviction or sentencing in violation of
10 this plea agreement, said violation shall be a material breach of this agreement as further
11 defined below." *Id.* at 13:12-14. Finally, also as part of the Plea Agreement, the parties
12 agreed to jointly recommend Petitioner's sentencing be based on the following U.S.
13 Sentencing Guidelines Base Offense Level, Specific Offense Characteristics, Adjustments,
14 and Departures:

| 1. | Base Offense Level [USSG § 2G2.2(a)(2)] | 18 |
| 2. | Material involved minor(s) who had not reached age 12 [USSG § 2G2.2(b)(2)] | +2 |
| 3. | Distribution [USSG § 2G2.2(b)(3)] | 0-2 |
| 4. | Use of Computer [USSG § 2G2.2(b)(6)] | +2 |
| 5. | Sadistic Conduct [USSG § 2G2.2(b)(4)] | +4 |
| 6. | Possession of over 600 images [USSG § 2G2.2(b)(7)] | +5 |
| 7. | Acceptance of Responsibility [USSG § 3E1.1] | -3 |
| **Adjusted Offense Level:** | | **28-30** |

20 ECF No. 32 at 9:5-21. At sentencing, the Government recommended 97 months. ECF No.
21 51 at 2:15-19.

23     On August 18, 2016, a change of plea hearing was held before Magistrate Judge
24 William V. Gallo. ECF No. 34. After Petitioner was placed under oath, the Court found,
25 *inter alia*, that the plea was knowing and voluntarily entered,[4] there was factual and legal

---

[4]     At the time Petitioner pled guilty, he stated under oath that he had not taken any
drugs, alcohol, or medication in the last 48-hours that affected his ability to understand
what he was doing.

1    basis for the plea, and with limited exceptions, Petitioner effectively waived his right to

2    appeal or collaterally attack his sentence. *Id.* at 2:23-27.   Accordingly, the Magistrate

3    issued Findings and Recommendations, recommending that the district judge accept

4    Petitioner's guilty plea to Count 2 of the information. ECF No. 34 at 4:14-16.

5        On September 14, 2016, after no objections were received, the Court ordered that

6    the Findings and Recommendations of the Magistrate Judge were adopted and accepted

7    Petitioner's guilty plea. ECF No. 38.

8        On November 1, 2016, after Petitioner signed his Plea Agreement but before his

9    sentencing, the Federal Sentencing Commission revised § 2G2.2(b)(3)(F) of the

10   Sentencing Guidelines ("Guideline 2G2.2(b)(3)(F)"), one of the factors that the parties

11   agreed would be considered by the Court at sentencing under the Plea Agreement, to

12   require that a defendant must have "knowingly engaged in distribution" before applying

13   the two-level enhancement.[5]  U.S. SENTENCING GUIDELINES MANUAL app. C, amend. 801

14   (U.S. SENTENCING COMM'N (Nov. 1, 2016) (the "801 Amendment").

15       On November 8, 2016, prior to sentencing, a Pre-Sentence Investigation Report

16   ("PSR") was prepared by the Probation Department indicating Petitioner had a criminal

17   history category of "I"[6], a *base* offense level of 18, a guideline range of 97-121 months,

18   ECF No. 39, ¶¶ 102, and recommended a sentence of 90-months pursuant to 18 U.S.C. §

19   3553(a), *id.* at ¶ 140.

20       On November 16, 2016, the Government filed its Sentencing Memorandum and

21   Sentencing Summary Chart, in which it concurred with Probation's calculation of the *base*

22   offense level and guideline range but ultimately, recommended a higher sentence of 97-

---

[5]    As noted, as part of Petitioner's Plea Agreement, he pled guilty to Count 2 (possession of images of minors) in exchange for the Government's agreement not to pursue Count 1 (distribution of images of minors). ECF. No. 32 at 1:21-2:4. Although Petitioner could no longer be charged with distribution of images as a separate crime, carrying a separate sentence, whether the images are distributed is one of factors the Sentencing Guidelines require the sentencing judge to consider when calculating a sentence for possession of images. *Id.*

[6]    Based off his "0" criminal history points. *See also* ECF No. 42 at 7:1-3.

1    months. ECF. No. 41 at 9:6-9.

2            On December 5, 2016, Petitioner filed his Sentencing Memorandum, in which

3    defense counsel proffered an 18-month sentencing recommendation arguing that

4    Petitioner's guideline range could be either (1) 78 to 97-months "if the court adopts the

5    advisory guideline range for the adjusted offense level of 28" or (2) "97 to 121-months if

6    the court adopts the adjusted offense level of 30" and applied the +2 enhancement for

7    "distribution" under § 2G2.2(b)(3). *See* ECF. Nos. 42 and 43.  Although Petitioner's

8    counsel did not mention the revision to the Sentencing Guidelines in this brief, his counsel

9    did argue that the 2+ enhancement for distribution should not apply. *See* ECF No. 42 at 7-

10   8.  Petitioner's Sentencing Memorandum also noted that Petitioner was "remorseful,"

11   "accepted full responsibility for his conduct," and honestly believed that "his arrest and

12   conviction will make him a better man and father to his children." *Id.* at 10:24-28.

13           On December 12, 2016, the Court held a sentencing hearing and began the hearing

14   by noting that "under *Booker*, the Guidelines are advisory."    Sentencing Hearing

15   Transcript, ECF No. 51 at 2:14-15.  The Court discussed the fact that the offense had "a

16   base offense level of [1]8,[7] increased by two levels under 2G2.2(b)(2), increased by four

17   levels under 2G2.2(b)(4), increased by a further two levels under 2G2.2.(b)(6), increased

18   by an additional two levels under 2G2.2(b)(3), and then increased by an additional five

19   levels under 2G2.2(b)(7)," which resulted "in an adjusted offense level of 33." *Id.* at 31:15-

20   22.  The Court noted that "the Government had recommended a three-level reduction for

21   acceptance of responsibility," and due to the fact that Petitioner had "no prior criminal

22   history," the recommended guideline range was "97 to 121 months." *Id.* at 31:23-32:1.

23   Nonetheless, the Court "after considering the 3553(A) factors in this case [was] . . . satisfied

24   that a sentence of 78 months would serve the purposes of sentencing." ECF No. 51 at 32:2-

25

26   [7]    The transcript contains a typographical omission given that (1) neither party disputes

27   Petitioner starts at a base offense level of 18 under the Sentencing Guidelines and (2) the

     Court's calculations for the adjusted offense level only makes sense if the Court had said

28   18.

1    4. During this hearing, the Court also directly asked Petitioner, "Do you acknowledge that

2    you have waived your right to appeal and collateral attack?"   ECF No. 51 at 37:4-6.

3    Petitioner responded with, "Yes, Your Honor." *Id.* at 37:7.

4        On January 11, 2017, judgment was entered.  Judgment, ECF No. 48; see also CV

5    ECF No. 1 at 1.

6        On January 18, 2019, Petitioner filed the instant Motion *pro se*, seeking a reduction

7    of his sentence pursuant to 28 U.S.C. § 2255.  CV ECF No. 1.  This is Petitioner's first

8    challenge to the sentence, and he bases it on ineffective assistance of counsel. Specifically,

9    he alleges his attorney failed to (1) ensure the Court applied the appropriate guidelines at

10   sentencing and (2) file an appeal immediately afterward disputing the guidelines used by

11   the Court to sentence him, despite his requests that she do so.  ECF. No. 54.  Thereafter,

12   Petitioner also filed a supplemental motion seeking an order, regarding his 2255 petition.

13   ECF. No. 56.  The Government has not filed a response to either of Petitioner's filings.

14       On May 20, 2020, Petitioner also filed a Motion for Issuance of a Compassionate

15   Release Order pursuant to 18 U.S.C. § 3582(c)(1)(A).  ECF No. 59.  He argues that poor

16   conditions of confinement in addition to his history of having had an appendectomy and

17   suffering from arthritis, sleep apnea, and chronic asthma put him at a high risk for severe

18   complications should he contract COVID-19. *Id.* at 1.

19       On May 27, 2020, the Government filed a Response in Opposition to Defendant's

20   Motion to Reduce Sentence, arguing that Petitioner's motion should be denied due to a

21   failure to (1) exhaust administrative remedies or (2) show extraordinary and compelling

22   reasons for his release.  ECF No. 60.

23       On August 28, 2020, the Government filed a Notice of Additional Information with

24   Respect to Defendant's Motion for Compassionate Release.  ECF No. 62.  This notice

25   advised that "the Centers for Disease Control ("CDC") revised its public guidance on June

26   25, 2020 to indicate that the scientific data could not definitively establish asthma as a risk

27   factor for severe illness from COVID-19." *Id.* at 1:19-23.

28

3:19-cv-00127-BEN
3:16-cr-01294-BEN

III.   **LEGAL STANDARD**

   A.   **Motion to Correct, Vacate, or Set Aside Sentence (28 U.S.C. § 2255)**

   "A motion to attack a prison sentence made under section 2255 is a federal prisoner's substitute for a petition for a writ of habeas corpus." Josephine R. Potuto, *The Federal Prisoner Collateral Attack: Requiescat in Pace*, 1988 B.Y.U. L. Rev. 37, 37 (1988).   Under 28 U.S.C. § 2255 ("Section 2255"), a movant is entitled to relief if the sentence: (1) was imposed in violation of the Constitution or the laws of the United States; (2) was given by a court without jurisdiction to do so; (3) was in excess of the maximum sentence authorized by law; or (4) is otherwise subject to collateral attack.  *See also United States v. Speelman*, 431 F.3d 1226, 1230 n.2 (9th Cir. 2005).

   If it is clear the movant has failed to state a claim, or has "no more than conclusory allegations, unsupported by facts and refuted by the record," a district court may deny a Section 2255 motion without an evidentiary hearing.  *United States v. Quan*, 789 F.2d 711, 715 (9th Cir. 1986); *see also Schriro v. Landrigan*, 550 U.S. 465, 474 (2007) (providing that "if the record refutes the applicant's factual allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing"). Thus, courts may deny a hearing where "the petitioner's allegations, viewed against the record, fail to state a claim for relief or are so palpably incredible or patently frivolous as to warrant summary dismissal." *United States v. McMullen*, 98 F.3d 1155, 1158–59 (9th Cir. 1996) (rejecting the appellant's contention that the district court erred by denying the appellant an evidentiary hearing on his ineffective assistance of counsel claim because the appellant failed to allege specific facts entitling him to relief) (internal quotations and citations omitted).  The right to a hearing must be earned by alleging "specific facts, which, if true, would entitle him [or her] to relief." *Id.*

   The Ninth Circuit has "consistently held that a § 2255 petitioner cannot challenge nonconstitutional sentencing errors if such errors were not challenged in an earlier proceeding." *See, e.g., McMullen*, 98 F.3d at 1157 (holding that the because the appellant "failed to raise any objection regarding the type of methamphetamine, either at sentencing

1  or on direct appeal, he is barred from raising this issue in a § 2255 motion," and "the

2  district court properly denied his motion to vacate his sentence on this ground"). Thus,

3  "Petitioners waive the right to object in collateral proceedings unless they make a proper

4  objection before the district court or in a direct appeal from the sentencing decision." *Id.*

5  "On collateral attack, a habeas petitioner contesting . . . the constitutional inadequacy of

6  counsel" carries the burden of proof. *Arrendondo v. Neven*, 763 F.3d 1122, 1137 (9th

7  Cir. 2014)

## B.   Motion to Reduce Sentence (28 U.S.C. § 3582)

8

9  Generally, a "court may not modify a term of imprisonment once it has been

10  imposed." 28 U.S.C. § 3582(c). However, an exception allows courts to do so in any case

11  where a motion is filed by either the (1) Director of the Bureau of Prisons, or (2) a federal

12  inmate, after the earlier of having (a) "fully exhausted all administrative rights to appeal a

13  failure of the Bureau of Prisons to bring a motion on the defendant's behalf" or (b) the

14  lapse of 30 days from the receipt of such a request by the warden of the defendant's

15  facility." 28 U.S.C. § 3582(c)(1)(A). However, the Court, upon reviewing such a motion,

16  may (1) consider the factors set forth in 18 U.S.C. § 3553(a)[8] to the extent they are

17  applicable and (2) find that (a) "extraordinary and compelling reasons warrant such a

18  reduction" *or* "the defendant is at least 70 years of age, has served at least 30 years in

19  prison," (b) "the defendant is no a danger to the safety of any other person or community,"

20  and (b) "a reduction is consistent with applicable policy statements issued by the

21  Sentencing Commission." 28 U.S.C. § 3582(c)(1)(A). The United States Sentencing

22  Commission, "in promulgating general policy statements regarding the sentencing

23

24  [8]    Thus, courts considering a motion brought under 18 U.S.C. 3582 ("Section 3582")

25  may consider the factors contained in 18 U.S.C. 3553(a) ("Section 3553(a)"), which include examining the (1) "nature and circumstances of the offense and the history and

26  characteristics of the defendant"; (2) "need for the sentence imposed"; (3) "kinds of sentences available"; (4) "kinds of sentences and the sentencing range established"; (5)

27  "pertinent policy statement"; (6) "need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct"; and (7)

28  "need to provide restitution to any victims of the offense."

-9-

1  modification provisions . . . shall describe what should be considered extraordinary and

2  compelling reasons for sentence reduction." 28 U.S.C. § 994(t). In the Commentary to

3  Section 1B1.13 of the Sentencing Guidelines, covering Reduction in Term of

4  Imprisonment, the Sentencing Commission indicates that a defendant meets the

5  requirements of "extraordinary and compelling reasons" where the medical condition of

6  the defendant "substantially diminishes the ability of the defendant to provide self-care

7  within the environment of a correctional facility and from which he or she is not expected

8  to recover." U.S. SENT'G GUIDELINES MANUAL § 1B1.13, cmt. n. 1. The conditions listed

9  include where the defendant suffers from a (1) "terminal illness (*i.e.*, a serious and

10  advanced illness with an end of life trajectory)," such as "metastatic solid-tumor cancer,

11  amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia"

12  and/or (2) "a serious physical or medical condition," (3) "a serious functional or cognitive

13  impairment," or (4) "deteriorating physical or mental health because of the aging process,

14  that substantially diminishes the ability of the defendant to provide self-care within the

15  environment of a correctional facility and from which he or she is not expected to recover."

16  *Id.*

17        In sum, a motion under 18 U.S.C. § 3582 ("Section 3582") entails two primary

18  inquiries: "first, whether Defendant has satisfied the administrative exhaustion

19  requirement, and second, whether Defendant has demonstrated extraordinary and

20  compelling reasons for a sentence reduction." *United States v. Galaz*, No. 15-CR-02559-

21  GPC, 2020 WL 4569125, at *2 (S.D. Cal. Aug. 7, 2020). "A defendant bears the burden to

22  show special circumstances meeting the bar set by Congress and the Sentencing

23  Commission for compassionate release to be granted." *United States v. Shabudin*, 445 F.

24  Supp. 3d 212, 214 (N.D. Cal. 2020) (citing *See United States v. Greenhut*, No. 2:18-cr-

25  00048-CAS-1, 2020 WL 509385, at *1 (C.D. Cal. Jan. 31, 2020); *United States v. Sprague*,

26  135 F.3d 1301, 1306-07 (9th Cir. 1998)).

27

28

## IV.    **DISCUSSION**

### A.    **Motion to Correct, Vacate, or Set Aside Sentence (28 U.S.C. § 2255)**

Petitioner argues that his sentence should be reduced for four principal reasons: First, he argues that even though his attorney argued "against the imposition of the 2-point distribution enhancement under U.S.S.G. §2G2.2(b)(3)(F)," she "failed to argue the applicability of a new standard that had been put into effect one month prior to my sentencing by a substantive amendment contained in U.S.S.G. Amendment 801," and that if she had argued the new standard, "the District Court would have applied the new, correct standard and would not have imposed the 2-point enhancement, whereby lowering my Offense Level from 30 to 28," which would have resulted in a lower sentence.  CV ECF No. 1 at 2-3; *see also* ECF No. 54.[9]  Second, Petitioner argues that any untimeliness of his motion should be excused due to equitable tolling. *Id.* at 5.  Third, he argues the provision in the Plea Agreement providing that "[t]he parties agree that the defendant may argue that this offense characteristic [e.g., distribution] does not apply and the United States will argue that it does apply," does not limit his right to argue the applicability at sentencing, and he has not waived his right to challenge this issue on direct appeal. *Id.* at 3.  Fourth, he argues that his attorney "provided ineffective assistance of counsel at [his] . . . sentencing . . . by failing to file a direct appeal of the sentence at [his] . . . request." *Id.* at 2-3.

Petitioner asks the Court for relief by (1) "correct[ing] the sentence imposed in this matter, by first recalculating my offense level using the correct standard for the applicability of the 2-point distribution enhancement at U.S.S.G. §2G2.2(b)(3)(F), resulting in an offense level of 28," and (2) "determin[ing] the final sentence based on an offense level of 28."  CV ECF No. 1 at 6.  In the alternative, Petitioner asks that "if the District Court concludes that the 2-point enhancement is appropriate on the existing

---

[9]    CV ECF No. 1 and ECF No. 54 are the same filing as Petitioner's Section 2255 Motion was filed in his criminal case but also initiated a separate civil case.  As such, all references to CV ECF No. 1 also refer to ECF No. 54.

1    sentencing record, that the District Court determine whether the plea agreement allows a
2    direct appeal on this limited sentencing issue." *Id.*   Petitioner also asks the Court to find
3    "that an offense level of 28 is appropriate, that the sentence imposed in this case be
4    amended to 63 months instead of the 78 months previously imposed," which "reflects the
5    same two-level downward departure as was granted previously, but from a lwo-level [sic]
6    lower starting point." *Id.*
7           The Court analyzes each of Petitioner's arguments in turn, but nonetheless, for the
8    reasons outlined below, denies his motion.

9           **1.    *Petitioner's Claims are Untimely***

10          Petitioner argues that his Motion should be "subject to equitable tolling because
11   extraordinary circumstances . . . prevented [him] . . . from filing this motion until the
12   present time." CV ECF No. 1 at 5. He argues that those extraordinary circumstances were
13   his (1) inability to obtain access to the essential legal documents in his case until his transfer
14   to FCI Englewood on July 13, 2018, (2) lack of access to even minimal legal research
15   materials until his transfer to FCI Englewood on July 13, 2018, and (3) need to recover
16   from serious physical injuries from assaults by other prisoners. *Id.*

17          A motion to vacate must be filed within one year from the date the conviction
18   becomes final. *See, e.g.*, 28 U.S.C. § 2255(f) (providing that "[a] 1-year period of
19   limitation shall apply to a motion under this section," which will run from, *inter alia*, the
20   date on which "the judgment of conviction becomes final"). A conviction becomes final
21   once the deadline for filing the notice of appeal has expired. *United States v. Gilbert*, 807
22   F.3d 1197, 1199 (9th Cir. 2015) (noting that the sentence "became a final judgment for
23   habeas purposes once the deadline for filing the notice of appeal expired 14 days later");
24   *see also* FED. R. APP. P. 4(b)(1)(A) (providing that "[i]n a criminal case, a defendant's
25   notice of appeal must be filed in the district court within 14 days after the later of . . . the
26   entry of judgment"). The statute of limitation period can be equitably tolled, but "[t]o be
27   entitled to equitable tolling, a habeas petitioner bears the burden of showing '(1) that he
28   has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood

1  in his way.'" *Gilbert*, 807 F.3d at 1202 (quoting *Holland v. Florida*, 560 U.S. 631, 649

2  (2010)). "This is a very high threshold." *Id.*

3       Here, Petitioner did not file a notice of appeal.  CV ECF No. 1 at 3.  The date of

4  judgment of conviction was January 11, 2017.  Thus, fourteen (14) days after entry of

5  judgment on January 11, 2017, Petitioner's conviction became final on January 25, 2017.

6  FED. R. APP. P. 4(b)(1)(A).  Accordingly, the statute of limitations period for Petitioner to

7  file a motion to vacate under 28 U.S.C. § 2255 ended on January 24, 2018, one year after

8  the deadline to appeal.

9       On January 18, 2019, Petitioner filed the instant Motion to Reduce his Sentence.  CV

10  ECF No. 1.  As a result, because he filed after the January 24, 2018 deadline, his Motion

11  is untimely and may be time-barred.  Because the Court analyzes the merits of Petitioner's

12  Motion below, the Court declines to decide whether Petition set forth adequate grounds for

13  equitable tolling given the Court's review of the merits renders that issue moot.  Further,

14  Petitioner's failure to appeal suggests his Motion has been procedurally defaulted.

15       **2.**     ***Petitioner's Motion is Barred due to Procedural Default***

16       "The general rule in federal habeas cases is that a defendant who fails to raise a claim

17  on direct appeal is barred from raising the claim on collateral review." *Sanchez-Llamas v.*

18  *Oregon*, 548 U.S. 331, 350–51 (2006); *see also United States v. Frady*, 456 U.S. 152, 168

19  (1982) (providing that a collateral challenge is not a substitute for an appeal); *Sunal v.*

20  *Large*, 332 U.S. 174, 178 (1947) ("So far as convictions obtained in the federal courts are

21  concerned, the general rule is that the writ of habeas corpus will not be allowed to do

22  service for an appeal"); *United States v. Dunham*, 767 F.2d 1395, 1397 (9th Cir. 1985)

23  ("Section 2255 is not designed to provide criminal defendants repeated opportunities to

24  overturn their convictions on grounds which could have been raised on direct appeal").

25  "Where a defendant has procedurally defaulted a claim by failing to raise it on direct

26  review, the claim may be raised in habeas only if the defendant can first demonstrate either

27  [1] 'cause' and actual 'prejudice,' or that [2] he is 'actually innocent.'" *Bousley v. United*

28  *States*, 523 U.S. 614, 622 (1998) (internal citations omitted); *see also Sanchez-Llamas*, 548

1    U.S. at 350-51 (same); *United States v. Ratigan*, 351 F.3d 957, 962 (9th Cir. 2003).  Here,
2    Petitioner's Motion makes no claims of actual innocence, which would contradict the
3    record in this case, including his guilty plea.  *See* CV ECF No. 1.  As such, Petitioner must
4    make a showing of cause and actual prejudice to overcome his procedural default.

5         "Constitutionally ineffective assistance of counsel constitutes cause sufficient to
6    excuse a procedural default." *Ratigan*, 351 F.3d at 964-65; *see also* Potuto, B.Y.U. L. Rev.
7    37 (providing that "[t]he Supreme Court so far has recognized only two claims for cause
8    sufficient to permit collateral review despite a default: (1) ineffective assistance of counsel,
9    and (2) an objective factor 'external to the defense' that produced the default").

10        In order to excuse his procedural default, Petitioner "must show that counsel's
11   performance   was   deficient   and   that   the   deficient   performance   prejudiced   the
12   defense." *Ratigan*, 351 F.3d at 964–65 (citing *Strickland v. Washington,* 466 U.S. 668,
13   687 (1984)).  In *Ratigan*, the petitioner argued his counsel's performance was deficient
14   because he failed to object to certain issues, namely, the insufficiency of proof offered by
15   the government. *Id.* at 964-65.  Nonetheless, the Court did not find this potential failing
16   on the defense counsel's part to warrant overcoming the procedural default: "His counsel's
17   failure to recognize every possible legal argument, including the arguably insufficient
18   proof offered by the government as to one element of the crime, does not, however,
19   constitute cause." *Id.* at 965.  Rather, "the mere fact that counsel failed to recognize the
20   factual or legal basis for the claim, or failed to raise the claim despite recognizing it, does
21   not constitute cause for a procedural default." *Cockett v. Ray,* 333 F.3d 938, 943 (9th
22   Cir.2003).  Thus, the alleged errors were not so serious as to deprive the appellant of a fair
23   trial, and as a result, the ineffective assistance claim was not supported by the record. *Id.*
24   at 965.  Accordingly, the appellant "failed to show that he should be excused from his
25   procedural default." *Id.* at 965; *see also* McMullen, 98 F.3d at 1157 (holding that "the
26   district court properly denied his motion to vacate his sentence" on the ground of
27   procedural default because the appellant "failed to raise any objection regarding the . . .
28   [issue], either at sentencing or on direct appeal . . . [and was] . . . barred from raising this

1   issue in a § 2255 motion").

2   Here, just like the petitioners in *Ratigan* and *McMullen*, who also tried to raise

3   ineffective assistance of counsel claims through a 2255 motion without raising the claim

4   on direct appeal first, Petitioner did not file an appeal. CV ECF No. 1 at 3. Petitioner takes

5   issue with his attorney failing to argue the new standard for Guideline 2G2.2(b)(3)(F) even

6   though he does not dispute that she argued against the factor applying to him. CV ECF

7   No. 1 at 2-3. Just as the *Ratigan* court determined that the petitioner's counsel's failure to

8   object to certain issues or raise certain arguments despite recognizing them did not

9   constitute "[c]onstitutionally ineffective assistance of counsel . . . sufficient to excuse a

10  procedural default," *Ratigan*, 351 F.3d at 965, Petitioner's claims that his attorney failed

11  to argue certain standards, despite requesting the right sentence level, also fails to excuse

12  his procedural default. Thus, Petitioner's Motion, like the motions in *Ratigan* and

13  *McMullen*, must be denied unless he can make a showing of cause and prejudice. However,

14  for the reasons outlined below, the Court finds that Petitioner has made no such showing,

15  thus, his claims have fallen victim to the bar of procedural default.

### 3.   *Petitioner's Claims Were Waived Under the Plea Agreement*

17  Petitioner argues the provision in the Plea Agreement providing that "[t]he parties

18  agree that the defendant may argue that this offense characteristic does not apply and the

19  United States will argue that it does apply" (the "Preservation Provision") does not limit

20  his right to argue the applicability of that characteristic to his sentencing, and he has not

21  waived his right to challenge this issue on direct appeal. CV ECF No. 1 at 3.

22  "A defendant's waiver of his rights to appeal and to bring a collateral attack is

23  generally enforced if '(1) the language of the waiver encompasses his right to appeal on

24  the grounds raised, and (2) the waiver is knowingly and voluntarily made.'" *Davies v.*

25  *Benov*, 856 F.3d 1243, 1246–47 (9th Cir. 2017). "Claims that the plea or waiver itself was

26  involuntary or that ineffective assistance of counsel rendered the plea or waiver

27  involuntary, however, may not be waived." *Id.* at 1247. Even where a change in the

28  applicable sentencing law arises after a defendant signs a plea agreement, courts will still

1 enforce the plea waiver. *Stewart v. United States*, No. 12-CR-00461-H-1, 2017 WL
2 3174692, *3-4 (S.D. Cal. July 26, 2017). For example, in *Stewart v. United States*, the plea
3 waiver contained identical language to the one at issue in this case. 2017 WL 3174692, at
4 *3-4. The Court reiterated that "an otherwise valid waiver is not rendered unenforceable
5 by a subsequent change in the applicable sentencing law." *Stewart*, 2017 WL 3174692, at
6 *3-4; citing *United States v. Johnson*, 67 F.3d 200, 202 (9th Cir. 1995) ("The fact that [a
7 defendant] did not foresee the specific issue that he now seeks to appeal does not place the
8 issue outside the scope of the waiver"). The court noted that it had not imposed a sentence
9 above the high end of the guideline range recommended by the Government. *Id.* at *4.
10 Thus, "[b]ecause the . . . Court imposed a sentence well below the high end of the guideline
11 range recommended by the Government, Defendant's waiver encompasses the present §
12 2255 motion." *Id.* at *4. "Thus, even if Defendant's § 2255 claim had merit, it would be
13 barred by the waiver in his plea agreement." *Id.*

14        The Court finds that like the *Stewart* defendant, to the extent Petitioner attempts to
15 collaterally attack his conviction or sentence based on a subsequent change to the
16 Sentencing Guidelines after the signed his Plea Agreement, he waived his right to do so
17 under that Plea Agreement. *See United States v. Navarro-Botello*, 912 F.2d 318, 321 (9th
18 Cir. 1990) (providing that "if it is not a due process violation for a defendant to waive
19 constitutional rights as part of a plea bargain, then a defendant's waiver of a
20 nonconstitutional right, such as the statutory right to appeal a sentence, is also waivable");
21 *United States v. Schuman*, 127 F.3d 815, 817 (9th Cir. 1997) ("[P]lea agreements are
22 contractual in nature and are measured by contract law standards") (internal quotations
23 omitted). On August 18, 2016, Petitioner signed the Plea Agreement, pursuant to which
24 Petitioner agreed to plead guilty as to Count 2 of the information, which charged Petitioner
25 with possession of child pornography, in exchange for the Government's agreement not to
26 (1) prosecute additional charges—namely, charges as to Count 1 of the information for
27 distribution, and (2) seek any other upward adjustments or departures unless Petitioner
28 breaches the agreement. ECF. No. 32 at 1:21-2:4. As part of the Plea Agreement,

1    Petitioner waived to the full extent of the law, any right to appeal or to collaterally attack

2    the conviction or sentence, "except a post-conviction collateral attack based on a claim of

3    ineffective assistance of counsel, unless the Court imposes a custodial sentence above the

4    high end of the guideline range (which if USSG 5G1.1(b) applies, will be the statutorily

5    required mandatory minimum sentence) recommended by the Government pursuant to this

6    agreement at the time of sentencing." ECF. No. 32 at 12:28-13:11. Here, Section 5G1.1(b)

7    of the Federal Sentencing Guidelines Manual provides that "[w]here a statutorily required

8    minimum sentence is greater than the maximum of the applicable guideline range, the

9    statutorily required minimum sentence shall be the guideline sentence." U.S. SENT'G

10   GUIDELINES MANUAL § 5G1.1(b), (c)(2). Here, however, not only was there no statutory

11   minimum for the crime at issue,[10] but the Court also did not impose a sentence above the

12   high end of the guideline range, meaning that none of the exceptions to the waiver applied

13   here.

14        The Court views the Plea Agreement as providing that the Preservation Provision

15   allowed the parties to preserve argument regarding the distribution offense characteristic

16   at the sentencing hearing. Once the Court ruled on this issue at sentencing though, the

17   waiver provision in the Plea Agreement barred both a collateral attack and direct appeal of

18   the Court's ruling on that issue. Further, to the extent Petitioner may try to argue such a

19

20   [10]   Petitioner was charged under 18 U.S.C. § 2252. 18 U.S.C. § 2252 (a)(4)(B) provides
     that "[a]ny person who . . . . knowingly possesses, or knowingly accesses with intent to
21   view . . . . visual depiction [which] involves the use of a minor engaging in sexually explicit
     conduct . . . shall be punished as provided in subsection (b) of this section." Subsection
22   (b), in turn, provides that "[w]hoever violates, or attempts to violate, paragraph (4) of
     subsection (a) shall be [1] fined under this title or [2] imprisoned not more than 10 years,
23   or [3] both." 18 U.S.C. § 2252(b)(2). However, "if any visual depiction involved in the
     offense involved a prepubescent minor or a minor who had not attained 12 years of age,"
24   which was the case here, "such person shall be fined under this title and imprisoned for not
     more than 20 years." Id. Only "if such person has a prior conviction . . . such person shall
25   be fined under this title and imprisoned for not less than 10 years nor more than 20 years."
     18 U.S.C. § 2252(b)(2). In other words, in this case, Petitioner's offense carried a
26   maximum sentence of not more than 20 years. Id. Because he had no prior conviction, the
27   10-year mandatory minimum applying to defendants with prior convictions did not apply.

28

-17-

waiver was not voluntary, the Court notes that during the Sentencing hearing, the Court directly asked Petitioner, "Do you acknowledge that you have waived your right to appeal and collateral attack?" ECF No. 51 at 37:4-6. Petitioner responded with, "Yes, Your Honor." *Id.* at 37:7. Thus, Petitioner validly waived his right to collaterally attack his sentence, and the record discloses no issues as to the voluntariness of Petitioner's waiver. To the contrary, there are many record indications that his collateral attack waiver was voluntary. *See id.* As such, though he protests now that he objected to the guideline range that the Court applied, the record clearly demonstrates this claim has no merit. Therefore, the Court enforces the collateral attack waiver. *Ruiz-Diaz*, 668 F. App'x at 290 (citing *United States v. Watson*, 582 F.3d 974, 988 (9th Cir. 2009)). However, pursuant to the Plea Agreement, Petitioner preserved a claim of ineffective assistance of counsel.

### 4.    *Petitioner Has Not Established Ineffective Assistance of Counsel*

"The Sixth Amendment, applicable to the States by the terms of the Fourteenth Amendment, provides that the accused shall have the assistance of counsel in all criminal prosecutions." *Missouri v. Frye*, 566 U.S. 134, 138 (2012). That "right to counsel is the right to effective assistance of counsel," *Missouri*, 566 at 138 (citing *Strickland v. Washington*, 466 U.S. 668, 686 (1984)), and applies to all critical stages of criminal proceedings, including "the consideration of plea offers." *Missouri*, 566 U.S. at 138.

The Supreme Court has held "that the two-part *Strickland v. Washington* test applies to challenges to guilty pleas based on ineffective assistance of counsel." *Hill v. Lockhart*, 474 U.S. 52, 58–59 (1985); *see also Missouri*, 566 U.S. at 138 (same). Under this test, "a defendant who pleads guilty upon the advice of counsel may only attack the voluntary and intelligent character of the guilty plea by showing that the advice he received from counsel was ineffective." *Lambert v. Blodgett*, 393 F.3d 943, 979 (9th Cir. 2004) (quoting *Hill*, 474 U.S. at 56–57); *see also Tollett v. Henderson*, 411 U.S. 258, 266 (1973) (providing that "after a criminal defendant pleads guilty, on the advice of counsel, he is not automatically entitled to federal collateral relief"; rather, "[t]he focus of federal habeas inquiry is the nature of the advice and the voluntariness of the plea, not the existence as

-18-

1 such of an antecedent constitutional infirmity"). Here, notably, Petitioner does not claim
2 that his guilty plea was not voluntary. He does not claim it was not intelligent. He does
3 not claim that he would not have pled guilty but for advice of his counsel.

4     A claim of ineffective assistance of counsel requires the defendant to meet the
5 *Strickland* test by showing that (1) under an objective standard, "counsel's assistance was
6 not within the range of competence demanded of counsel in criminal cases" and (2) the
7 defendant suffered actual prejudice because of this incompetence. *Lambert*, 393 F.3d at
8 979–80; *Lockhart*, 474 U.S. at 57–58. Here, Petitioner argues his counsel provided him
9 with ineffective assistance of counsel because his attorney failed to (1) file a direct appeal
10 despite his request and (2) argue the applicability of the 801 Amendment to Guideline
11 2G2.2(b)(3)(F)—even though he admits his attorney argued "against the imposition of the
12 2-point distribution enhancement under U.S.S.G. §2G2.2(b)(3)(F)"—which went into
13 effect before Petitioner's sentencing. CV ECF No. 1 at 2-3. The Court finds that, as
14 analyzed below, Petitioner has failed to create a showing of either (1) deficient
15 performance or (2) actual prejudice.

16         a.   *Deficient Performance*

17     "When a convicted defendant complains of the ineffectiveness of counsel's
18 assistance, the defendant must show that counsel's representation fell below an objective
19 standard of reasonableness." *Strickland*, 466 U.S. at 687-88. This involves proving "that
20 counsel's performance was deficient," by "showing that counsel made errors so serious
21 that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth
22 Amendment." *Strickland*, 466 U.S. at 687; *see also Iaea v. Sunnn*, 800 F.2d 861, 864 (9th
23 Cir. 1986) (citing *Strickland*). "A convicted defendant making a claim of ineffective
24 assistance must identify the acts or omissions of counsel that are alleged not to have been
25 the result of reasonable professional judgment." *Strickland*, 466 U.S. at 690. Then, the
26 court must evaluate "whether, in light of all the circumstances, the identified acts or
27 omissions were outside the wide range of professionally competent assistance." *Id.* Courts
28 review claims of ineffective assistance of counsel under a "strong presumption that

1  counsel's conduct falls within the wide range of reasonable professional assistance."

2  *Staten v. Davis*, 962 F.3d 487, 495 (9th Cir. 2020).  The Court should not view counsel's

3  actions through "the distorting lens of hindsight."  *Hendricks v. Calderon*, 70 F.3d 1032,

4  1036 (9th Cir. 1995) (quoting *Deutscher v. Whitley*, 884 F.2d 1152, 1159 (9th Cir. 1989)),

5  *vacated on other grounds by Angelone v. Deutscher*, 500 U.S. 901 (1991).

6       Petitioner argues his attorney's performance was deficient first, by refusing to file a

7  direct appeal, despite his request that she do so.  CV ECF No. 1 at 3.  Nonetheless, he

8  admits the sentencing issue he wishes to appeal—i.e., whether the Court should apply

9  Guideline 2G2.2(b)(3)(F) when determining Petitioner's sentence—was argued at the

10 sentencing hearing before the district court, *id.* at 4, and the transcript of the sentencing

11 hearing confirms this, ECF No. 51 at 9-10.  However, he contends that the Preservation

12 Provision in the Plea Agreement did not limit his right to argue Guideline 2G2.2(b)(3)(F)'s

13 applicability to his sentence on appeal.  CV ECF No. 1 at 3.

14      The Court finds Petitioner's claim that his counsel's failure to file an appeal does

15 not show ineffective assistance of counsel.  An indigent defendant "does not have a

16 constitutional right to compel appointed counsel to press nonfrivolous points requested by

17 the client, if counsel, as a matter of professional judgment, decides not to present those

18 points." *Jones v. Barnes*, 463 U.S. 745, 751 (1983).  Counsel "must be allowed to decide

19 what issues are to be pressed."  *Id.*  Otherwise, the ability of counsel to present the client's

20 case in accord with counsel's professional evaluation would be "seriously undermined."

21 *Id.*; *see also Smith v. Stewart*, 140 F.3d 1263, 1274 n.4 (9th Cir. 1998) (noting that counsel

22 is not required to file "kitchen-sink briefs" because it "is not necessary and is not even

23 particularly good . . . advocacy").  There is, of course, no obligation to raise meritless

24 arguments on a client's behalf. *See Strickland*, 466 U.S. at 687-88 (requiring a showing of

25 deficient performance as well as prejudice).  Thus, counsel is not deficient for failing to

26 raise a weak issue. *See Miller*, 882 F.2d at 1434.  Here, given Petitioner waived the right

27 to appeal and collaterally attack his sentence in the Plea Agreement, the Court finds

28 Petitioner's counsel's refusal to file an appeal that would violate the Plea Agreement in no

1   way constitutes deficient performance.

2       Petitioner also argues that his attorney performed deficiently because even though

3   she argued that the Court should not apply the 2-point distribution enhancement under

4   Guideline 2G2.2(b)(3)(F), she "failed to argue the applicability of a new standard that had

5   been put into effect one month prior to . . . [his] sentencing by a substantive amendment

6   contained in U.S.S.G. Amendment 801."   CV ECF No. 1 at 2.   Instead, he argues his

7   "attorney concurred with the government's erroneous assertion of the incorrect standard

8   and obsolete caselaw that had been superceeded by the substantive amendment that had

9   recently come into effect." *Id.* at 2-3. Again, a defendant may not cry ineffective assistance

10   of counsel merely because his or her attorney did not raise all of the arguments the client

11   wishes the attorney would have raised. *Jones*, 463 U.S. at 751.   Courts view attorneys'

12   professional judgment with a presumption of deference. *Strickland*, 466 U.S. at 689. Here,

13   the Court notes that Petitioner's counsel gave a commendable argument on Guideline

14   2G2.2(b)(3)(F) (e.g., the distribution issue).   *See, e.g.*, ECF No. 51 at 9:24-10:23

15   (Petitioner's counsel addressed why she believed the Court should not factor in

16   distribution).  His counsel argued that while often, people are "intentionally sharing files

17   with other people," that was not the case with Petitioner, and "there was no evidence of

18   any intentional distribution." *Id.* at 10:2-5.  She even elaborated on how "[h]e had turned

19   his firewall to accept incoming but not outgoing," "had a virus software EBG to protect

20   from hackers," and "had a truecrypt software program to protect people from infiltrating

21   his computer." *Id.* at 10:1-14.  She stated that her "biggest concern is the enhancement and

22   a potential sentencing disparity." *Id.* at 10:22-23.  The Court finds that Petitioner's counsel

23   gave a laudable argument that warrants commendation rather than criticism.  To the extent

24   Petitioner may not have addressed some issues or argument at the hearing, counsel is not

25   required to address every argument in the book. *Stewart*, 140 F.3d at 1274, n.4. The Court

26   noted that it was "pretty familiar with the file, with the pre-sentence report, with the

27   sentencing memorandums that were filed."   ECF No. 51 at 29:24-30:2.   There is no

28   evidence of a substandard performance by counsel.  Further, as analyzed below, there is

1  also no prejudice.

2            b.    *Actual Prejudice*

3       "[I]n order to satisfy the 'prejudice' requirement, the defendant must show that there

4  is a reasonable probability that, but for counsel's errors," the outcome would have been

5  different. *Hill*, 474 U.S. at 58–59. "The purpose of the Sixth Amendment guarantee of

6  counsel is to ensure that a defendant has the assistance necessary to justify reliance on the

7  outcome of the proceeding." *Strickland*, 466 U.S. at 691-92.

8       Petitioner claims prejudice by arguing that if his "attorney had pointed out that a

9  new standard was in effect, and had not agreed with the government's incorrect citation of

10  9th Circuit caselaw, the District Court would have applied the new, correct standard and

11  would not have imposed the 2-point enhancement, whereby lowering my Offense Level

12  from 30 to 28," which would have resulted in a lower sentence.  CV ECF No. 1 at 3.  As

13  discussed below, the Court concludes that to the extent the new standard was not raised at

14  the Sentencing Hearing, Petitioner was in no way prejudiced by this because (1) there was

15  evidence that Petitioner could be found to have distributed pornography, even under the

16  new standard, which the Court did, in fact, find, and (2) Petitioner seeks a sentence based

17  off a base level of 28, but the sentence Petitioner received fell within the guideline range

18  he seeks.   Thus, there is no dispute that the knowing standard under the 801 Amendment

19  should have applied (and did) at Petitioner's sentencing hearing regardless of whether

20  Petitioner's counsel or the Government argued its application.[11]  Thus, Petitioner's request

21   

---

22  [11]    Further, Section 1B1.11 of the Guidelines provides that "[t]he court shall use the Guidelines Manual in effect on the date that the defendant is sentenced."  U.S. SENT'G

23  GUIDELINES MANUAL § 1B1.11.  The only exception to this rule is where "the court

24  determines that use of the Guidelines Manual in effect on the date that the defendant is sentenced would violate the ex post facto clause of the United States Constitution," in

25  which case, "the court shall use the Guidelines Manual in effect on the date that the offense

26  of conviction was committed."  U.S. SENT'G GUIDELINES MANUAL § 1B1.11.  Ex post facto laws have been defined as laws that (1) punish as a crime, acts that were innocent when

27  performed, (2) make the punishment for a crime more burdensome than the punishment for the crime was at the time the crime was committed, or (3) deprive a defendant of a defense

28  available under the law in effect when an act was committed.  *See Collins v. Youngblood*,

3:19-cv-00127-BEN
3:16-cr-01294-BEN

1 | that the Court "correct the sentence imposed in this matter, by first recalculating my offense
2 | level using the correct standard for the applicability of the 2-point distribution enhancement
3 | at U.S.S.G. §2G2.2(b)(3)(F)" is moot because the Court already applied the correct
4 | standard under the 801 Amendment. *See, e.g., Tur v. YouTube, Inc.*, 562 F.3d 1212, 1214
5 | (9th Cir. 2009) ("we conclude that an issue is moot when deciding it would have no effect
6 | within the confines of the case itself").

7 |    First, the record supports the Court's finding that Petitioner knowingly distributed
8 | the pornographic images he admitted to possessing, and as such, Petitioner was not
9 | prejudiced by his counsel's alleged failure to address that the standard had changed. At
10 | any sentencing hearing, "the court must afford counsel for the defendant and for the
11 | Government an opportunity to comment on the probation officer's determinations and on
12 | other matters relating to the appropriate sentence, and must rule on any unresolved
13 | objections to the presentence report." *See, e.g., United States v. Castaneda*, 45 F. App'x
14 | 591, 592–93 (9th Cir. 2002). Here, the record indicates this was done. *See generally* ECF
15 | No. 51 (showing the Court asked for comments from probation and counsel for both parties
16 | as well as heard argument as to the application of Guideline 2G2.2(b)(3)(F)). "For each
17 | matter controverted, the court must make either a finding on the allegation or a
18 | determination that no finding is necessary because the controverted matter will not be taken
19 | into account in, or will not affect, sentencing." *See, e.g., Castaneda*, 45 F. App'x at 593
20 | (vacating and remanding for resentencing where "the district court found that he was
21 | eligible for a three-level adjustment only without specifying whether this decision was
22 | influenced by the Probation Office's argument"). Here, the record indicates that, after
23 | hearing oral argument from both sides on the matter, the Court determined Petitioner had,
24 | in fact, distributed pornography. *See, e.g.*, ECF No. 51 at 31:2-7 (noting that while "we
25 |

26 | 497 U.S. 37, 52 (1990); *see also* U.S. CONST. ART. I, § 9, Clause 3 (prohibiting Congress
27 | from enacting ex post facto laws). In this case, the exception for ex post facto laws does
28 | not apply, and Guideline 1B1.11 required the Court to apply the Guidelines Manual in effect at the time of Petitioner's sentencing.

1   have no way to stop the distribution *to* others, . . . we do have a way of stopping the

2   distribution *by* others such as Mr. Fernando-Perez[, a]nd the way to stop this is to stop the

3   supply") (emphasis added).

4        After the 801 Amendment to Guideline 2G2.2(b)(3)(F), "[e]vidence is sufficient to

5   support a conviction for distribution" where "it shows that the defendant maintained

6   child pornography in a shared folder, knew that doing so would allow others to download

7   it, and another person actually downloaded it." *United States v. Budziak*, 697 F.3d 1105,

8   1109 (9th Cir. 2012); *see also United States v. McElmurry*, 776 F.3d 1061, 1065 (9th Cir.

9   2015)). Evidence of a defendant's "technical knowledge and familiarity" with file-sharing

10   software can be sufficient to establish the defendant knowingly distributed

11   child pornography under 18 U.S.C. § 2252(a)(2). *Budziak*, 697 F.3d at 1109–10; *see also*

12   U.S. SENTENCING GUIDELINES MANUAL app. C, amend. 801 (U.S. SENTENCING COMM'N

13   (Nov. 1, 2016) (providing that "[f]or purposes of subsection (b)(3), the defendant

14   'knowingly engaged in distribution' if the defendant . . . knowingly committed

15   the distribution").

16        Petitioner argues that under *United States v. Leafstedt*, No. 3:15-cr-00047-SLG,

17   2018 U.S. Dist. LEXIS 55741, at *1-3 (D. Alaska Apr. 2, 2018) mere use of a file sharing

18   program and a partial file actually downloaded does not suffice to warrant application of

19   Guideline 2G2.2(b)(3)(F) after the 801 Amendment. The Court agrees. Rather, the Court

20   must find that the defendant not just used a file sharing program but knew it could distribute

21   the files. In *Leafstedt*, the defendant, like defendant here, was indicted on charges related

22   to child pornography and pled guilty to one count of possession of child pornography. 2018

23   U.S. Dist. LEXIS 55741 at *1-3. Like Petitioner's PSR, the *Leafstedt* PSR applied the

24   Sentencing Commission's Guidelines and "calculated Mr. Leafstedt's total offense level at

25   30," which carried a sentencing range of 97 to 120 months. *Id.* at *1. Nonetheless, "[a]t

26   sentencing, the Court adopted the guidelines calculation set out in the Presentence Report,"

27   and like this Court, "sentenced Mr. Leafstedt to a below guidelines term of 75 months'

28   imprisonment." *Id.* at *3. The *Leafstedt* defendant, like Defendant here, filed a Section

1  2255 Motion, asserting "that he should have received 'a 2 level downward departure based

2  on United States Sentencing Guidelines § 2G2.2(b)(1) which provides for a . . . 2 level

3  reduction in the Base Offense Level in light of there having [been] no 'distribution' of

4  unlawful images under the circumstances of his case.'" *Id.* at *3. Nonetheless, the court

5  denied the defendant's 2255 motion. *Id.* at *3. It first noted that the defendant had

6  misinterpreted the sentencing guidelines:

> Thus, the 2 level reduction provided for by § 2G2.2(b)(1) only applies
> when a defendant's base offense level is 22. However, Mr. Leafstedt
> pleaded guilty to a violation of § 2252(a)(4), and therefore his base
> offense level was 18. Accordingly, he was not entitled to the 2 level
> decrease provided in § 2G2.2(b)(1).

11 *Id.* at *2.

12  The court further noted that the defendant "did not receive an increase in offense level for

13  distribution." *Id.* at *2. This was because the PSR in his case determined that although the

14  defendant, like Petitioner, used a file sharing program from which the FBI was able to

15  download a series of videos from the defendant's computer, "there has been no evidence

16  submitted to verify that Leafstedt 'knowingly' distributed the videos/images." *Id.* at *2-3.

17      In this case, unlike in *Leafstedt*, discovery showed that Petitioner used the Gnutella

18  peer to peer file sharing network, and based on his knowledge of computers, the PSR

19  concluded Petitioner was aware of its sharing properties. ECF No. 39 at 10, ¶ 45. As such,

20  the evidence showed that "the defendant maintained child pornography in a shared folder,

21  knew that doing so would allow others to download it," and another person (e.g., the

22  Government) actually downloaded it. *Budziak*, 697 F.3d at 1109. Thus, there was evidence

23  to support the Court's finding that Petitioner distributed pornography. Further, as noted by

24  the Court at the Sentencing Hearing, the Sentencing Guidelines are advisory, not

25  mandatory.[12] *See, e.g., United States v. Booker*, 543 U.S. 220, 246 (2005) (adopting an

26

27  [12]    As part of Petitioner's August 18, 2016 Plea Agreement, Petitioner was also warned
that "the recommendation made by the Government is not binding on the Court, and it is
28  uncertain at this time what defendant's sentence will be." ECF No. 32 at 8:26-27. The

approach that would make the Guidelines system advisory); *Allen v. Ives*, No. 18-35001, 2020 WL 5639693, at \*6 (9th Cir. Sept. 22, 2020) (Fletcher, J., concurring) (noting that *Booker* "rendered the Sentencing Guidelines advisory rather than mandatory"). Thus, even if the Court had failed to consider the 801 Amendment, he has not *per se* demonstrated prejudice.

Petitioner also relies on *United States v. Akel*, 388 F. Supp. 3d 1248, 1249-53 (D. Nev. 2019) stating that it addressed "this very issue." ECF No. 56 at 1. In *Akel*, however, the court ruled on a motion to dismiss rather than the 2255 motion at hand. *Akel* involved another federal prison inmate who brought a petition to modify his sentence after pleading guilty to receipt of child pornography and contending a post-sentencing amendment to the U.S. Sentencing Guidelines entitled him to a sentence reduction. *Id.* at 1250. Just as in this case, pursuant to the defendant's plea agreement, the government agreed to recommend the "low-end guidelines-range sentence of 97-121 months." *Id.* On appeal, the defendant contended "that he did not admit to knowing distribution in his plea agreement, so his sentence should be modified in light of Amendment 801." *Id.* at 1250. The court, however, determined that the defendant's Section 2255 petition was not cognizable:

> Although collateral review under section 2255 is . . . quite broad, it does not encompass all claimed errors in . . . sentencing. If a petitioner does not allege lack of jurisdiction or constitutional error, an error of law will not provide a basis for habeas relief unless that error resulted in a complete miscarriage of justice or in a proceeding inconsistent with the rudimentary demands of fair procedure.

*Id.* at 1251 (internal quotations omitted).

Thus, the *Akel* court determined that the defendant's "contention that he should be resentenced in light of Amendment 801 raises neither constitutional nor jurisdictional error." *Akel*, 388 F. Supp. 3d at 1251. *Akel* is distinguishable, however, in two respects:

Plea Agreement also provides that "[a]lthough the parties understand that the Guidelines are only advisory and just one of the factors the Court will consider under 18 U.S.C. § 3553(a) in imposing a sentence." *Id.* at 9:7-10.

First, the court was reviewing the sufficiency of the claims pleaded by the defendant on a motion to dismiss as opposed to ruling on the underlying Section 2255 Motion. Second, in *Akel*, the defendant's sentencing took place before the 801 Amendment. As a result, the court noted that "a district court's failure to apply a guideline that was not effective at the time of sentencing does not give rise to a complete miscarriage of justice." *Id.* (internal quotations omitted). Here, on the other hand, the 801 Amendment was in effect at the time of Petitioner's sentencing, which is why the Court applied it.

Second, Petitioner seeks a sentence based off an adjusted level of 28, CV ECF No. 1 at 6,[13] but he received a sentence within that guideline range, and as a result, suffered no prejudice. As part of Petitioner's August 18, 2016 Plea Agreement, the parties agreed to jointly recommend a certain Base Offense Level, Specific Offense Characteristics, and Departures. ECF No. 32 at 9:7-10. However, an asterisk was placed next to the factor for distribution, and the asterisk noted that the parties had agreed to argue just the application of that one factor. ECF No. 32 at 9:5-21. As shown below, this one factor had a two-level impact on Petitioner's sentence depending on whether it applied:

| Applying Guideline 2G2.2(B)(3): | | Without Applying Guideline 2G2.2(B)(3): | |
|---|---|---|---|
| Base Offense Level [USSG § 2G2.2(a)(2)] | 18 | Base Offense Level [USSG § 2G2.2(a)(2)] | 18 |
| Material involved pre-pubescent minor(s) or minor(s) who had not reached the age of 12 years [USSG § 2G2.2(b)(2)] | +2 | Material involved pre-pubescent minor(s) or minor(s) who had not reached the age of 12 years [USSG § 2G2.2(b)(2)] | +2 |
| Distribution [USSG § 2G2.2(b)(3)] | 2 | ~~Distribution [USSG § 2G2.2(b)(3)]~~ | ~~0~~ |
| Use of Computer [USSG § 2G2.2(b)(6)] | +2 | Use of Computer [USSG § 2G2.2(b)(6)] | +2 |
| Sadistic Conduct [USSG § | +4 | Sadistic Conduct [USSG § | +4 |

---

[13]     Petitioner makes clear the he "is not requesting a <u>de novo</u> sentencing, but only an opportunity to argue the effect that a [sic] offense level of 28 rather than 30 would have on the final sentence within the parameters of the plea agreement." CV ECF No. 1 at 6. Petitioner also asks the Court to rule "that an offense level of 28 is appropriate, that the sentence imposed in this case be amended to 63 months instead of the 78 months previously imposed," which "reflects the same two-level downward departure as was granted previously, but from a lwo-level [sic] lower starting point." *Id.*

-27-

| 2G2.2(b)(4)] | | 2G2.2(b)(4)] | |
|---|---|---|---|
| Possession of over 600 images [USSG § 2G2.2(b)(7)] | +5 | Possession of over 600 images [USSG § 2G2.2(b)(7)] | +5 |
| Acceptance of Responsibility [USSG § 3E1.1] | -3 | Acceptance of Responsibility [USSG § 3E1.1] | -3 |
| **Adjusted Offense Level:** | **30** | **Adjusted Offense Level:** | **28** |
| **Sentence:** | 97-121 months. *See* U.S. SENT'G GUIDELINES MANUAL, SENTENCING TABLE. | **Sentence:** | 78-97 months. *See* U.S. SENT'G GUIDELINES MANUAL, SENTENCING TABLE. |

On November 1, 2016, after Petitioner signed the August 18, 2016 Plea Agreement, but before his December 12, 2016 sentencing hearing, the Sentencing Commission revised U.S.S.G. § 2G2.2(b)(3)(F) to require that a defendant must have "knowingly engaged in distribution" before applying the two-level enhancement. U.S. SENTENCING GUIDELINES MANUAL app. C, amend. 801 (U.S. SENTENCING COMM'N (Nov. 1, 2016)[14]. Over one month later, on December 12, 2016, the Court held a sentencing hearing and began the hearing by reiterating that "under *Booker*, the Guidelines are advisory." Sentencing

---

[14]    The 801 Amendment served to address "circuit conflicts and application issues related to the child pornography guidelines." U.S. SENTENCING GUIDELINES MANUAL app. C, amend. 801 (U.S. SENTENCING COMM'N (Nov. 1, 2016). It noted that "[t]he circuits have reached different conclusions regarding whether application of the 2-level distribution enhancement at § 2G2.2(b)(3)(F) requires a mental state (mens rea), particularly in cases involving use of a file-sharing program or network." *Id.* The amendment adopted the approach of the Second, Fourth, and Seventh Circuits by amending "§ 2G2.2(b)(3)(F) to provide that the 2-level distribution enhancement applies if 'the defendant knowingly engaged in distribution.'" *Id.* However, as part of Petitioner's Plea Agreement, he pled guilty to Count 2 (possession of images of minors) in exchange for the Government's agreement not to pursue Count 1 (distribution of images of minors). ECF. No. 32 at 1:21-2:4. Thus, this change in the United States Sentencing Guidelines did not change the count which the Government dismissed (*e.g.*, distribution). *Id.* Instead, distribution merely factored into the total sentence for the possession count to which Petitioner pled guilty. Had the Government not dismissed the separate count for distribution, Petitioner may have had an additional five years added to his sentence. *See, e.g.*, 18 U.S.C. § 2252(a)(2) (providing that "[w]hoever violates, or attempts or conspires to violate, paragraph . . . (2) . . . of subsection (a) shall be fined under this title and imprisoned not less than 5 years and not more than 20 years").

1  Hearing Transcript, ECF No. 51 at 2:14-15; *see also Gall v. United States*, 552 U.S. 38, 50

2  n.6 (2007) (holding "that the sentence imposed by the experience District Judge in this case

3  was reasonable" even though it deviated from the sentencing guidelines).   The Court

4  discussed the fact that this had "a base offense level of [1]8, increased by two levels under

5  2G2.2(b)(2), increased by four levels under 2G2.2(b)(4), increased by a further two levels

6  under 2G2.2.(b)(6), increased by an additional two levels under 2G2.2(b)(3), and then

7  increased by an additional five levels under 2G2.2(b)(7)," which resulted "in an adjusted

8  offense level of 33." *Id.* at 31:15-22.  The district judge noted that "the Government had

9  recommended a three-level reduction for acceptance of responsibility," and due to the fact

10  that Petitioner had "no prior criminal history," the recommended guideline range was "97

11  to 121 months." *Id.* at 31:23-32:1.  This record indicates that the Court applied the 801

12  Amendment and determined that Petitioner's sentence resulted in an adjusted offense level

13  of 30.  However, the Court "after considering the 3553(A) factors in this case [was] . . .

14  satisfied that a sentence of 78 months would serve the purposes of sentencing." ECF No.

15  51 at 32:2-4.  In imposing a below-Guideline sentence, the Court noted that other than his

16  crime, he seemed to be "a pretty decent fellow," *id.* at 4:9-16, and seemed to be very

17  contrite and remorseful, *id.* at 13:3-7.  In sum, even though, after hearing oral argument on

18  the issue, including Petitioner's written argument against it, the Court applied Guideline

19  2G2.2(b)(3)(F).   Thus, Petitioner argues for a base offense level of 28, but the Court

20  ultimately gave Petitioner a sentence equivalent to a base offense level of 28.  Petitioner

21  argues that if his attorney had argued the 801 Amendment, the Court would have applied

22  it, bringing his adjusted offense level down to a 28, rather than a 30, such that when the

23  Court applied the 3553(A) factors, it would have reduced the offense from below the

24  bottom of the adjusted level (e.g., 78 instead of 97), meaning that Petitioner's sentence

25  would have been 59 months instead of 78 months.  The Court finds this argument not only

26  proves to be an exercise in pure speculation but also, again, operates on the incorrect

27  assumption that the Court did not apply the standard under the 801 Amendment merely

28  because it was not argued by the parties or counsel.

1    In sum, on a Section 2255 Motion, the Court will only provide postconviction relief

2   if the error was not harmless. *See, e.g., United States v. Davis*, 580 F. App'x 582, 583 (9th

3   Cir. 2014) (noting that in "the district court's denial of his motion for postconviction relief

4   pursuant to 28 U.S.C. § 2255 . . . [t]he applicable harmless error standard is whether the

5   error had a substantial and injurious effect or influence in determining the jury's verdict");

6   *see also Brecht v. Abrahamson*, 507 U.S. 619, 638 (1993) (holding that the "harmless-error

7   standard applies in determining whether habeas relief must be granted because of

8   constitutional error"); *Ybarra v. McDaniel*, 656 F.3d 984, 995 (9th Cir. 2011) (noting that

9   "[u]nder *Brecht* we ask whether the constitutional error 'had substantial and injurious

10   effect or influence in determining the jury's verdict'"). "A district court must start with

11   the recommended Guidelines sentence, adjust upward or downward from that point, and

12   justify the extent of the departure from the Guidelines sentence." *United States v. Munoz-*

13   *Camarena*, 631 F.3d 1028, 1030 (9th Cir. 2011). Where a district court "makes a mistake,

14   harmless error review applies." *Id.* An error might be harmless where "the district court

15   (1) acknowledges that the correct Guidelines range is in dispute and performs his

16   sentencing analysis twice, beginning with both the correct and incorrect range; (2) chooses

17   a within-Guidelines sentence that falls within both the incorrect and the correct Guidelines

18   range and explains the chosen sentence adequately; (3) imposes a statutory minimum or

19   maximum and adequately explains why no additional or lesser term of imprisonment is

20   necessary; or (4) performs the sentencing analysis with respect to an incorrect Guidelines

21   range that overlaps substantially with a correct Guidelines range such that the explanation

22   for the sentence imposed is sufficient even as to the correct range." *Munoz-Camarena*, 631

23   F.3d at 1030, n. 5. This list is not exhaustive, but is intended merely to illustrate the

24   general principle that harmless error is possible only where the requirements are met.

25    Here, while the Court applied the correct standard, even *assuming arguendo*, it had

26   not, the error would still fall under the harmless error rules because (1) the sentence

27   imposed (78 months) fell within what Petitioner argues was the correct range (78 months

28   to 97 months) and was explained adequately and (2) the Court performed the sentencing

-30-

analysis with respect to a hypothetically incorrect Guidelines range (97 to 121 months) that overlapped substantially with a hypothetically correct Guidelines range (78 months to 97 months) such that the explanation for the sentence imposed was sufficient even as to the correct range. As shown by the above chart, even if the Court had not applied Guideline 2G2.2(b)(3)(F), Petitioner would still have had a base offense level of 28, which carries with it a sentencing range of 78 to 97 months. U.S. SENT'G GUIDELINES MANUAL, SENTENCING TABLE. Petitioner's sentence, despite application of Guideline 2G2.2(b)(3)(F), was still at the bottom of the range for offense level 28, and thus, the application of the Section 3553(a) factors significantly decreased his sentence. The Section 3553(a) factors include, *inter alia*, consideration of the (2) "need for the sentence imposed." 18 U.S.C. § 3553(a). The Court, in arriving at its sentence, explicitly stated that it was satisfied "that a sentence of 78 months would serve the purposes of sentencing." ECF No. 51 at 32:3-4. This indicates that while the Court considered the advisory Guidelines, the Court's final sentence ultimately resulted from consideration of the Section 3553(a) factors. If those factors served as the primary impetus for the sentence given, any issues regarding application of Guideline 2G2.2(b)(3)(F) in no way prejudiced Petitioner.

Defendant argues that under *United States v. Feldman*, 793 F. App'x 170, 176 (4th Cir. 2019) "deficient performance which results in improper guideline error can and most often will be sufficient to satisfy the prejudice burden." ECF No. 56 at 2. In *United States v. Feldman*, the Fourth Circuit held that the district court erred in denying the defendant's Section 2255 motion and remanded for resentencing. 793 F. App'x at 176. The court interpreted Supreme Court precedent to hold that no "further showing of prejudice beyond the fact that the erroneous, and higher, Guidelines range set the wrong framework for the sentencing proceedings is necessary for most defendants to demonstrate prejudice." *Id.* at 174 (internal quotations omitted). Applying that precedent, the court concluded that the defendant's case fell into the typical sentencing precedent where an error related to the defendant's guidelines calculation was "sufficient to demonstrate a reasonable probability that he received a higher sentence as a result of that error than he would have received

1   otherwise." *Id.* at 174. The defendant had "shown that the Guidelines range used during

2   his sentence was higher than it should have been absent counsel's deficient performance in

3   failing to object to the Guidelines calculation: 46 to 57 months' imprisonment instead of

4   37 to 46 months' imprisonment." *Id.* at 174. Further, the *Feldman* court also noted that

5   "in discussing the appropriate sentence under § 3553(a), the Government argued in support

6   of a sentence at the bottom of the Guidelines range," while the defendant "argued for a

7   downward variance," and "the district court sentenced Feldman to the bottom-of-the-

8   Guidelines term of imprisonment of 46 months." *Id.* at 174. Thus, by selecting a sentence

9   at the bottom of the guidelines for the upper guidelines level, rejecting the defendant's

10  argument for a downward variance, the district court showed that it had selected the lowest

11  sentence it believed appropriate within *that* guideline range. *Id.* As a result, if it had

12  granted the defendant's requested downward variance, it likely would have granted a

13  sentence at the bottom of that range, meaning it likely would have sentenced the defendant

14  to 37 months instead of 46 months. *Id.* at 174-75. Thus, the court concluded that the

15  defendant "satisfied his burden of demonstrating prejudice under *Strickland*." *Id.* at 176.

16  Here, on the other hand, and as discussed, the Court's sentencing determination was

17  predominately impacted by its determination of what an appropriate sentence would be

18  under the Section 3553(a) factors. As such, Petitioner's sentence was within the requested

19  guideline range, and the Court determined that 78 months was an appropriate length. All

20  things considered, the base offense level was not the determining factor for the Court's

21  ultimate sentence, and thus, did not prejudice Petitioner. *But cf. Munoz-Camarena*, 631

22  F.3d at 1031 (concluding that "had the district court started with the correct Guidelines

23  range of 24 to 30 months, rather than 33 to 41 months, it may have arrived at a different

24  sentence").

25          Petitioner also cites to *United States v. Roberty*, 689 F. App'x 492, 493 (9th Cir.

26  2017) for the proposition that "[a] mistake in calculating the recommended guidelines

27  sentencing range is a significant procedural error that requires us to remand for

28  resentencing." ECF No. 56 at 2. In *Roberty*, "[t]he government conceded that Amendment

1   801 to U.S. Sentencing Guidelines § 2G2.2(b)(3)(F) was a retroactive, clarifying
2   amendment," and "the district court erred in calculating Roberty's guidelines range by
3   applying the section and increasing his offense level by two." 689 F. App'x at 493. As a
4   result, "[t]he error was not harmless." *Id.* Thus, the Ninth Circuit concluded that the
5   *Roberty* defendant did "not qualify for the two-level increase in § 2G2.2(b)(3)(F)." *Id.* at
6   493. It likewise determined that the defendant was "also potentially eligible for an
7   additional two-level decrease." *Id.* (citing U.S.S.G. § 2G2.2(b)(1)). As a result, those
8   "changes would give Roberty a different guidelines range that does not substantially
9   overlap with the range the district court calculated." *Id.* Hence, the court was required to
10  "vacate Roberty's sentence and remand to the district court for resentencing." *Id.* In
11  *Roberty*, however, the Court had not applied the 801 Amendment. Here, the Court did
12  apply the standard of the 801 Amendment. ECF No. 51 at 31.

13      In *United States v. Carty*, 520 F.3d 984, 988 (9th Cir. 2008), "the judge exercise[d]
14  [his] discretion to depart from the Guidelines or to deviate from the Guidelines based upon
15  [his] consideration of the factors set forth in 18 U.S. Code Section 3553(a) by imposing a
16  term of 360 months imprisonment." *Id.* at 990 (internal quotations omitted). On appeal,
17  the Ninth Circuit noted that "the district judge had presided over Carty's trial," "reviewed
18  the PSR and the parties' submissions that discussed applicability of § 3553(a) factors," and
19  "listened to testimony adduced at the sentencing hearing and to argument by both parties."
20  *Id.* at 995. Based on a consideration of those factors as well as the defendant' strong family
21  support and the impact of prolonged incarceration, the judge imposed a "sentence [that]
22  was within, but at the low end of, the Guidelines range." *Id.* at 995. "[W]hen a judge
23  decides simply to apply the Guidelines to a particular case, doing so will not necessarily
24  require lengthy explanation." *Id.* "Circumstances may well make clear that the judge rests
25  his decision upon the Commission's own reasoning that the Guidelines sentence is a proper
26  sentence (in terms of § 3553(a) and other congressional mandates) in the typical case, and
27  that the judge has found that the case before him is typical." *Id.* In *Carty*, the court found
28  that nothing suggested that case was any different. *Id.* Similarly, this Court, like the *Carty*

1  court, applied a sentence within Petitioner's requested guidelines range of level 28, and in

2  fact, at the very bottom of that range.

3       Again, Petitioner asks the Court to (1) "correct the sentence imposed in this matter,

4  by first recalculating my offense level using the correct standard for the applicability of the

5  2-point distribution enhancement at U.S.S.G. §2G2.2(b)(3)(F), resulting in an offense level

6  of 28," and (2) "determine the final sentence based on an offense level of 28." CV ECF

7  No. 1 at 6. First, even in the absence of argument by the Government or Petitioner's

8  attorney as to the 801 Amendment, nothing indicates that the Court did not use the correct

9  standard when evaluating Guideline 2G2.2(b)(3)(F). Thus, Petitioner has not carried his

10  burden of proof in this regard. To the contrary, the record contains evidence to support a

11  conclusion that Petitioner knowingly distributed under Guideline 2G2.2(b)(3)(F) due to his

12  computer knowledge, including self-admitted computer training in his current moving

13  papers. *See* ECF No. 1-2 at 24 (indicating that Petitioner "had computer training" albeit

14  "over ten yeras [sic] prior to the offense). Second, Petitioner seeks an offense level of 28,

15  which carries a sentence 78 to 97 months; however, Petitioner already received a sentence

16  at the bottom of that guideline range. Thus, he has in essence, already received what he

17  has requested because the sentence he received was within the level he seeks.

18       In the alternative, Petitioner asks that "if the District Court concludes that the 2-point

19  enhancement is appropriate on the existing sentencing record, that the District Court

20  determine whether the plea agreement allows a direct appeal on this limited sentencing

21  issue." *Id.* As stated, even if the Court concluded a 2-point reduction was appropriate,

22  which it does not, Petitioner would still be barred from filing an appeal not only by his Plea

23  Agreement but also by his failure to file one within the 14-day deadline provided under

24  Rule 35 of the Federal Rules of Criminal Procedure. *See, e.g., United States v. Aguilar-*

25  *Reyes*, 653 F.3d 1053, 1055–56 (9th Cir. 2011) (reinstating the original judgment after a

26  district court re-sentenced the defendant because the Ninth Circuit "and other circuit courts

27  have held that the fourteen-day deadline [of Rule 35 of the Federal Rules of Criminal

28  Procedure] is jurisdictional, thus divesting the district court of the power to amend the

1    sentence after fourteen days"). Petitioner also asks the Court to find "that an offense level
2    of 28 is appropriate, [and] that the sentence imposed in this case be amended to 63 months
3    instead of the 78 months previously imposed," which "reflects the same two-level
4    downward departure as was granted previously, but from a lwo-level [sic] lower starting
5    point." CV ECF No. 1 at 6. In other words, Petitioner is really asking the Court to apply
6    an adjusted offense level of 26. "The Court, however, has no authority to reconsider or
7    modify its sentence at this point." *United States v. Gomez*, No. 17CR2520-LAB-1, 2019
8    WL 1301756, at *1 (S.D. Cal. Mar. 21, 2019); 18 U.S.C. § 3582(c) (providing that "[t]he
9    court may not modify a term of imprisonment once it has been imposed except" for cases
10   of compassionate release, (2) where "expressly permitted by statute or by Rule 35 of the
11   Federal Rules of Criminal Procedure," or (3) where the sentencing range has subsequently
12   been lowered); *see also* FED. R. CRIM. P. 35 (providing that unless a motion is brought by
13   the Government, the court may only "correct a sentence that resulted from arithmetical,
14   technical, or other clear error" within fourteen days of sentencing the defendant"). Thus,
15   the Court has no reason to modify Petitioner's sentence.

16     **C.**   <u>**Motion to Reduce Sentence (28 U.S.C. § 3582)**</u>

17     On May 20, 2020, Petitioner also filed a Motion for Issuance of a Compassionate
18   Release Order pursuant to 3582(c)(1)(A). ECF No. 59. He argues that "it is impossible
19   for defendant to practice effective social distancing" under his conditions of confinement.
20   ECF No. 59 at 1. He also complains that "[p]oor ventilation and a lack of air filtration in
21   violation of ANSI/ASHRE standards . . . along with strictly rationed and highly diluted
22   cleaning supplies [makes] life here . . . a lot like 'living in a petri dish.'" *Id.* at 1. He also
23   contends that due to his history of having had an appendectomy, in addition to suffering
24   from arthritis, sleep apnea, and chronic asthma he is high risk for having extreme
25   complications should he contract the COVID-19 virus. *Id.* at 1. He further describes (1)
26   beatings by inmates, (2) plots to stab him, (3) a failure to provide medical assistance after
27
28

3:19-cv-00127-BEN
3:16-cr-01294-BEN

he suffered 9 broken ribs and a dislocated shoulder,[15] (4) deprivation of food, causing him to lose 20 pounds, (5) being scolded for pressing the emergency button after having an asthma attack, (6) unsanitary conditions, including but not limited to mold and insect infestations, (7) deprivation of his medically-necessary sleep apnea machine, and (8) one instance of alleged sexual assault. ECF No. 59 at 2-3.

On May 27, 2020, the Government filed a Response in Opposition to Defendant's Motion to Reduce Sentence under 18 U.S.C. § 3582(c)(1)(A)(i), arguing that Petitioner has failed to (1) "exhaust his administrative remedies" and (2) meet "his burden to show that a reduction is warranted." ECF No. 60 at 9:10-14. Petitioner has not filed a reply brief; however, in late July or August 2020, Petitioner submitted a release plan. ECF No. 61.

On August 28, 2020, the Government filed a Notice of Additional Information with Respect to Defendant's Motion for Compassionate Release. ECF No. 62. This notice advised that "the Centers for Disease Control ("CDC") revised its public guidance on June 25, 2020 to indicate that the scientific data could not definitively establish asthma as a risk factor for severe illness from COVID-19." ECF No. 62 at 1:19-23.

---

[15]    Petitioner alleges that "[a]lthough X-rays were taken, no medical assistance of any kind was provided for petitioner's 9 broken ribs and a dislocated shoulder." ECF No. 59 at 2. However, the Court notes that generally, there is no medical treatment for fractured ribs or a dislocated shoulder, beyond identifying the injury through X-rays. *See, e.g., Zhenggen Cui v. Holder*, 565 F. App'x 38, 40 (2d Cir. 2014) (declining to consider a contention that a party omitted a broken rib from an asylum statement "because there is no medical treatment for such a fracture"); *Higgins v. Corr. Med. Servs. of Illinois, Inc.*, 178 F.3d 508, 511 (7th Cir. 1999) ("For purposes of this case, it is undisputed that a shoulder dislocation causes great pain and is a serious medical need," but that no claim for deliberate indifference under the Eighth Amendment lies where the plaintiff "was not exhibiting the level of pain ordinarily associated with a dislocated shoulder" and refused to let a nurse examine his shoulder, but rather claimed deliberate indifference "for not doing exactly what Higgins wanted—that is, to send him to a hospital to be x-rayed"); *Harper v. Corizon Health Inc.*, No. 217CV00228JMSDLP, 2018 WL 6019595, at *4 (S.D. Ind. Nov. 16, 2018), *appeal dismissed*, No. 18-3641, 2019 WL 2483321 (7th Cir. Mar. 21, 2019) (noting that "[t]reatment of an anteriorly dislocated shoulder involves placing the dislocated shoulder back into alignment," and "[s]evere pain stops almost immediately once the shoulder joint is back in place").

As stated, Petitioner's Motion requires exhaustion of administrative remedies and demonstration of extraordinary and compelling reasons for reducing his sentence. *Galaz*, 2020 WL 4569125 at *2. The Government correctly notes that Petitioner has failed to "exhaust his administrative remedies" and meet "his burden to show that a reduction is warranted." ECF No. 60 at 9:10-14.

### 1.   *Petitioner Failed to Exhaust His Administrative Remedies*

Petitioner acknowledges that "issuance of a Compassionate Release Order pursuant to 3582(c)(1)(A) . . . requires the exhaustion of administrative remedies for failure of the bureau to bring the present motion on behalf of the defendant or the lapse of 30 days of the receipt of such requests by the warden of defendant's place of confinement." ECF No. 59 at 1. He alleges that this requirement "has been met by "petitioner's request to warden Greylick via electronic cop-out on April 7, 2020," citing to a footnote 1, which advises that he is "unable to print [the] electronic cop-out due to current lockdown." *Id.* at 1, 6. The Government responds that Section 3582 requires the exhaustion of remedies prior to seeking judicial relief, and Petitioner has not provided sufficient evidence that he satisfied this requirement. ECF No. 60 at 9:19-25.

In his motion, Petitioner alleges that on April 7, 2020, he requested that the warden file a motion on his behalf. ECF No. 59 at 1. Assuming the truth of Petitioner's allegations, this would mean that thirty (30) days later, or on May 7, 2020, if the warden had not responded to his request, Petitioner could seek judicial relief. Here, Petitioner filed his motion on May 20, 2020, so assuming he did, in fact, make a request to the warden, he exhausted his remedies. However, the Government argues that "Defendant's motion does not include the 'electronic cop-out' as an attachment, and BOP databases have no record of Defendant requesting compassionate release." ECF No. 60 at 12:18-13:2.

A motion for compassionate release "requires evidence that the Defendant has exhausted administrative remedies." *See United States v. Thorson*, No. CR16-277RSM, 2020 WL 2063516, at *1–2 (W.D. Wash. Apr. 29, 2020) (citing 18 U.S.C. § 3582(c)(1)(A)); *see also United States v. Deimer*, No. 17-CR-00416-WJM, 2020 WL

-37-

3958427, at *2 (D. Colo. July 13, 2020) ("Because Mr. Deimer has not provided evidence that he has exhausted his administrative rights, the Court respectfully recommends that his motion be denied for lack of exhaustion and hence, lack of jurisdiction"); *United States v. Rios*, No. 4:06-CR-14-5, 2020 WL 3410639, at *2, 6 (E.D. Tex. June 11, 2020) (dismissing a motion for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A), for want of jurisdiction because there was "no evidence that the Director of the BOP has requested a reduction on Rios's behalf or that Rios has fully pursued administrative remedies within the BOP"). In the Ninth Circuit, "district courts . . . have considered whether . . . [they] may create an exception to § 3582(c)(1)(A)(i)'s exhaustion requirement on the basis of the COVID-19 pandemic and concluded that failure to exhaust administrative remedies is fatal to a compassionate release petition even in light of the urgency created by COVID-19." *Thorson*, 2020 WL 3958427 at *2.

*United States v. Ruiz* involved a defendant, like Petitioner, who asserted "that he submitted paperwork regarding a compassionate release to the warden of a South Carolina facility where he was previously housed, but he has since been moved and is unable to obtain a copy of that paperwork." No. CR 12-3186 RB, 2020 WL 3265244, at *1 (D.N.M. June 17, 2020). Nonetheless, the court dismissed his motion without prejudice, reasoning that because he failed to provide evidence that he exhausted his administrative remedies, the court must "dismiss for lack of exhaustion." *Id.* at *2, 3. Some "[c]ourts have previously credited movants' statements about their submissions of requests for release to the Wardens of their facilities." *See, e.g., Galaz*, 2020 WL 4569125 at *3 (quoting *USA v. Trent*, No. 16-CR-00178-CRB-1, 2020 WL 1812214, at *1 (N.D. Cal. Apr. 9, 2020) ("Confronted with conflicting evidence, the Court credits [the applicant's] representation, which is based on direct knowledge rather than the failure to confirm the existence of a filing from over a month ago")). In *Galaz*, the court credited the petitioner's "statement that she submitted a request to the Warden of FMC-Carswell on April 5, 2020." 2020 WL 4569125 at *1. As a result, because "over 120 days have elapsed since Galaz's request was submitted—well above the 30 days mandated by 18 U.S.C. § 3582(c)(1)(A)," the

1    Court held that the exhaustion requirement has been met. *Id.* Assuming momentarily that

2    Petitioner did exhaust his remedies, it does not matter, for the Motion fails when the Court

3    proceeds to the next step of analysis.

4              2.    ***Petitioner Has Not Shown Extraordinary and Compelling Reasons***

5              Petitioner argues that, *inter alia*, (1) he is unable to practice effective social

6    distancing in his confinement conditions, (2) poor ventilation[16] and air filtration along with

7    highly diluted cleaning supplies make his conditions dangerous, and (3) his history of

8    having had an appendectomy, in addition to suffering from arthritis, sleep apnea, and

9    chronic asthma put him at a high risk of having severe complications should he contract

10   COVID-19. ECF No. 59 at 1. The Government responds by detailing the various safety

11   measures that the Bureau of Prisons ("BOP") has taken in response to the COVID-19

12   pandemic. ECF No. 60 at 3-5. It argues that "[n]otwithstanding the current pandemic

13   crisis, BOP must carry out its charge to incarcerate sentenced criminals to protect the

14   public." *Id.* at 5:17-18. Petitioner has not filed a reply brief; however, in late July or

15   August 2020, Petitioner submitted a release plan with the Court. ECF No. 61.

16             Congress has indicated that the United States Sentencing Commission, "in

17   promulgating general policy statements regarding the sentencing modification provisions .

18   . . shall describe what should be considered extraordinary and compelling reasons for

19   sentence reduction." 28 U.S.C. § 994(t). Accordingly, the Sentencing Commission's

---

21   [16]   Courts have noted that "poor ventilation can exacerbate asthma and allergies, and
22   allows molds, mildews and bacterial slimes to accumulate fester in shower rooms and
     restrooms where moisture laden air is not exchanged and refreshed." *Benjamin v. Fraser*,
23   161 F. Supp. 2d 151, 161 (S.D.N.Y. 2001), *on reconsideration in part*, No. 75 CIV. 3073
     (HB), 2001 WL 282705 (S.D.N.Y. Mar. 22, 2001), *and aff'd in part*, *vacated in part*, 343
24   F.3d 35 (2d Cir. 2003). In fact, the denial of adequate ventilation, in addition to
25   exacerbating asthma, may even violate a defendant's Eighth Amendment rights. *See, e.g.*,
     *Hoptowit v. Spellman*, 753 F.2d 779, 784 (9th Cir. 1985) (agreeing "with the district court's
26   conclusion that the condition of "lack of adequate ventilation and air flor undermines the
27   health of inmates and the sanitation of the penitentiary," which "violates the minimum
     requirements of the Eighth Amendment"). Here, however, Petitioner has not directly
28   alleged the inadequate ventilation has exacerbated his asthma.

Commentary to Section 1B1.13 of the Sentencing Guidelines, covering Reduction in Term of Imprisonment, indicates that a defendant meets the requirements of "extraordinary and compelling reasons" where the medical condition of the defendant "substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." U.S. SENT'G GUIDELINES MANUAL § 1B1.13, cmt. n. 1. The conditions listed include where the defendant is suffering from a (1) "terminal illness (*i.e.*, a serious and advanced illness with an end of life trajectory)," such as "metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia," (2) "a serious physical or medical condition," (3) "a serious functional or cognitive impairment," or (4) "deteriorating physical or mental health because of the aging process, that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." *Id.*

Here, the Court finds that Petitioner has not proved a (1) terminal illness, or (2) serious functional or cognitive impairment. Thus, he must show evidence of either a serious physical or medical condition or a deteriorating physical health condition that substantially diminishes his ability to provide self-care. Unlike other cases where a defendant failed to include evidence of medical conditions, *see, e.g., United States v. Fuller*, No. CR17-0324JLR, 2020 WL 1847751, at *1 (W.D. Wash. Apr. 13, 2020) (denying a motion for compassionate release where the defendant "did not include any documentary evidence in support of his alleged medical conditions"), Petitioner has provided documentation of medical conditions (e.g., chronic asthma, arthritis, and sleep apnea). His documentation shows that he may have medical equipment, including but not limited to a DeVilbiss DV54D IntelliPAP Auto Adjust CPAP System. ECF No. 59 at 8. Although Petitioner provides no evidence of his need for an inhaler in his motion, the Court notes that his PSR indicates that "[h]e suffers from asthma and has been prescribed *Albuterol* to alleviate the condition." ECF No. 39 at 14. He indicates that the conditions of the prison have exacerbated his conditions, causing "a newly developed increased

1   inability to breathe through the nose[,] increasing his need of the albuterol inhaler, an

2   immune system debilitating agent." ECF No. 59 at 1.

3         Although the Government initially, did not dispute that asthma put individuals at

4   high risk of serious illness, it now changes its position.  *Compare* ECF No. 60 at 17

5   ("According to the Centers for Disease Prevention and Control, persons with 'moderate to

6   severe asthma' are at high risk of serious illness from COVID-19," and the "Government

7   recognizes that Defendant suffers from asthma") *with* ECF No. 62 at 1:19-23 (contending

8   that the CDC "revised its public guidance on June 25, 2020 to indicate that the scientific

9   data could not definitively establish asthma as a risk factor for severe illness from COVID-

10  19").  Nonetheless, the Court notes that as of the date of this order, the CDC still lists

11  "asthma (moderate-to-severe)" under the categories "adults of any age with the following

12  conditions might be at an increased risk for severe illness from the virus that causes

13  COVID-19." https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-

14  with-medical-conditions.html?CDC_AA_refVal=https%3A%2F%2Fwww.cdc.gov%2F

15  coronavirus%2F2019-ncov%2Fneed-extra-precautions%2Fgroups-at-higher-risk.html.

16  Sleep apnea and arthritis, however, are not conditions that put people at greater risk.

17        As to the seriousness of Petitioner's asthma, the court looks to the decisions of other

18  courts in evaluating the seriousness of that condition.  Severe asthma has been defined as

19  "having continual [daytime] symptoms, limited physical activity, frequent exacerbations,

20  and frequent nighttime symptoms." *United States v. Lee*, 445 F. Supp. 3d 272, 274 (N.D.

21  Cal. 2020) (internal quotations omitted); *see also Torres v. Milusnic*, No.

22  CV204450CBMPVCX, 2020 WL 4197285, at *2 (C.D. Cal. July 14, 2020) (noting that

23  "[i]ndividuals at any age might be at increased risk of severe illness from COVID-19 if

24  they have the following conditions: asthma").

25        Most courts that have granted compassion release where the defendant has asthma

26  have done so where the defendant has other conditions creating a high risk and the

27  defendant does not pose a danger to the community.  *See, e.g., United States v. Fowler*,

28  445 F. Supp. 3d 452, 454 (N.D. Cal. 2020) (granting the defendant's motion for

-41-

compassionate release noting that the movant, "who has chronic asthma, 'presents an extraordinary and compelling reason' warranting compassionate release, '[g]iven the current pandemic and the likelihood that [she] would potentially suffer severe symptoms"); *United States v. Heffington*, No. 1:93-CR-05021-NONE, 2020 WL 4476485, at *9 (E.D. Cal. Aug. 4, 2020) (granting motion for compassionate release where the defendant suffered from at least four separate medical conditions that, along with his advanced age, put "him at a substantially higher risk for becoming severally ill if he were to contract the virus"); *United States v. Burrill*, 445 F. Supp. 3d 22, 27–28 (N.D. Cal. 2020) (granting motion for immediate release for a defendant who was "75 years old and suffers from asthma, high blood pressure, high cholesterol, diabetes, diverticulosis, blood clots, hearing loss, glaucoma, cataracts, and lower back nerve pain").

Meanwhile, courts denying a motion for compassionate release have done so where the defendant was younger, had no other health conditions creating a high risk, and/or posed a danger to the community. *See, e.g., United States v. Jones*, No. 14-CR-00225-JSW-1, 2020 WL 4584242, at *3 (N.D. Cal. Aug. 10, 2020) (denying a motion for compassion release of a 49-year old who claimed that in "addition to his asthma, he would be considered obese, which also could place him at greater risk if he were to contract COVID-19," but "[h]is medical records show that, otherwise, he is healthy," and he had not demonstrated that "he would not pose a danger to the community and that the Section 3553(a) factors counsel against release"); *Porter-Eley v. United States*, No. 4:16-CR-89, 2020 WL 3803030, at *3 (E.D. Va. July 6, 2020) (denying the defendant's motion for compassionate release where the "Petitioner's BOP records shows that Petitioner had childhood asthma for which she is prescribed an Albuterol inhaler," but her "medical records do not indicate that she has moderate-to-severe asthma," she "was never hospitalized for asthma, . . . her presentence report does not include any history of asthma," and "there is also no indication that Petitioner suffered from asthma exacerbation or any particular respiratory issues"); *United States v. Belle*, 457 F. Supp. 3d 134, 139–40 (D. Conn. 2020) (denying the petitioner's motion for a compassionate relate where the 26-year

old petitioner had "not suffered 'an asthma exacerbation in years,'" thus, given his youth and health status, there was "insufficient evidence in this record that his current BOP facility cannot adequately care for him"); *United States v. Rodriguez*, No. 16-CR-167 (LAP), 454 F.Supp.3d 224, 228 (S.D.N.Y. Apr. 14, 2020) (denying the motion for compassionate release of a 26-year-old with "reportedly well controlled" asthma, stating: "All he has done is to note that he has asthma, he is in prison, and there is a COVID-19 outbreak nationwide," which "is not enough").

In *United States v. Rodriguez*, No. 3:17-CR-4477-BTM, 2020 WL 4592833, at *2–4 (S.D. Cal. Aug. 5, 2020), this district court also granted compassionate release where it found that the defendant's "combination of obesity, asthma, and major depressive disorder present[ed] extraordinary and compelling reasons to grant her compassionate release, consistent with the Guidelines' policy statement." Among the conditions considered, the court noted that Ms. Rodriguez "has suffered from chronic asthma since childhood" and "uses both a rescue inhaler (Albuterol) and a steroidal inhaler (Mometasone Furoate) to manage her asthma." *Id.* at *2. The court noted that "[t]he CDC lists asthma as an underlying condition that may increase the risk of severe illness from COVID-19," but "the self-care actions the CDC recommends to prevent contracting COVID-19—such as social distancing and constant sanitization of living spaces—are incompatible with prison conditions." *Id.* at *2-3. It reiterated that social distancing was next to impossible in a prison unit with dormitory style bunk beds that are not spaced six feet apart, and no one wears masks while they sleep. *Id.* The court also analyzed the 3553 factors and determined that (1) she had not been convicted of a violent crime; (2) the 32 months she had been in custody was more time than she had ever served, and thus, was likely to serve as a deterrent; (3) she would be on strict home confinement and required to undergo drug testing; and (4) would be living with her parents away from the negative influences and people of her past. *Id.* at *4. Thus, the court determined that the circumstances alleviated any concerns for the danger to the community and granted the defendant's Section 3582 motion. *Id.*

Similarly, in *United States v. Galaz*, this district court granted a compassionate

-43-

1   release where the defendant suffered from several factors making her high risk, including
2   but not limited to obesity, a history of smoking, latent tuberculosis, and depression. *Galaz*,
3   2020 WL 4569125 at *3-4. The court found that "the heightened risks that Galaz faces
4   based on her medical conditions if she were to contract COVID-19 weigh heavily in favor
5   of her release." *Id.* at *4. The court also noted that that the defendant (1) had shown
6   remorse and (2) would not threaten to harm public safety if released. *Id.* at *6. The court
7   reasoned that "[a]ny incarcerated person with even one of the underlying conditions
8   identified by the CDC is unlikely to be able 'to provide self-care within the environment
9   of a correctional facility' to avoid contracting COVID-19." *Id.* at *5. Similarly, in *United*
10  *States v. Lee*, 445 F. Supp. 3d 272, 274 (N.D. Cal. 2020), the Court found that defendant
11  had "met his burden to show that he suffers from moderate to severe asthma through his
12  sworn declaration as well as the sworn declaration of his wife, and the government does
13  not dispute that moderate to severe asthma is a recognized risk factor." It also noted that
14  it was "very troubled by the fact that defendant has not had access to his inhaler for the last
15  several weeks." *Id.* at 274. Thus, it ordered that "Defendant shall be released only after
16  all release and travel plans are in place." *Id.* However, the *Lee* court noted that the
17  Government did not contend that the defendant posed a danger to the community. *Id.*

18       Unlike the defendants in *Rodriguez* and *Galaz*, who both had multiple conditions
19  putting them at high risk and were not deemed to be a danger to society, here, it appears
20  Petitioner's only high risk condition is his asthma, which appears to be relatively well
21  controlled. *See* ECF No. 62 at 2:10-12 (indicating that "BOP's medical records show that
22  Defendant has not suffered from acute episodes as a result of his asthma," and "his asthma
23  is being managed by BOP with prescription medication, including inhalers"). Further,
24  unlike the defendant in *Lee*, Petitioner does not allege he has been denied access to his
25  inhaler or treatment for his asthma. Additionally, unlike in *Lee*, where the Government did
26  not contend the petitioner's release would pose a danger to the community, here, the
27  Government argues against Petitioner's release. In sum, the Court believes that, when
28  compared with other decisions, Petitioner has not provided evidence sufficient to

-44-

1    demonstrate extraordinary and compelling reasons to warrant his release.

2    Finally, if Petitioner were released to San Diego, like he requests, San Diego county

3    currently has 52,355 cases and 853 deaths.  *See* https://covid.cdc.gov/covid-data-

4    tracker/#county-map.  Meanwhile, Englewood, the City, where Petitioner's detention

5    facility is located, has 11,252 cases and 377 deaths.  *See* https://covid.cdc.gov/covid-data-

6    tracker/#county-map.  Petitioner's current confinement facility, "Englewood FCI[,]

7    currently[17] has no inmates or staff members who are COVID-positive."  ECF No. 60 at

8    6:26-28.  Thus, in terms of protecting Petitioner from contracting COVID-19, Petitioner

9    may very well be safest in his current facility, where the number of cases is drastically

10   lower and the population is relatively isolated. *See United States v. Miller*, No. 3:16CR121,

11   2020 WL 4547809, at *1 (E.D. Va. Aug. 6, 2020) (denying motion for compassionate

12   release where the defendant sought "compassionate release pursuant to the First Step Act

13   because he has chronic asthma and claim[ed] . . . that it places him at higher risk for serious

14   illness or death from COVID-19," but the facility where petitioner was located had only

15   had one inmate test positive for COVID-19).

16   "Generally, courts have found that the defendant cannot rely merely on 'a fear of

17   contracting COVID-19' as grounds for compassionate release." *Miller*, 2020 WL 4547809

18   at *4.  Here, although there is no dispute that Petitioner has asthma, which puts him at an

19   increased risk of severe complications if he contracted COVID-19, Petitioner has not

20   described having more asthma attacks than before the COVID-19 pandemic or present any

21   other evidence creating a nexus between his medical condition and the ongoing pandemic

22   warranting relief under section 3582. *See, e.g., Galaz*, 2020 WL 4569125 at *5 (concluding

23   that the defendant had effectively demonstrated a nexus between her medical conditions

24   and the ongoing pandemic which supported a reduction under section 3582).  Although

25   Petitioner describes being deprived of his sleep apnea machine, he does not describe being

26   deprived of his inhaler or denied breathing treatments. *See Lee*, 445 F. Supp. 3d at 274.

---

27
28   [17]    Although this was at the time of the Government's response on May 27, 2020, the same website indicates there are currently no inmates or staff positive for COVID-19.

1  The Court also notes that the pandemic has been ongoing for more than six months now;
2  yet, Petitioner has not contracted the virus, and the case count at FCI Englewood is zero.

3       Petitioner seeks to be released because "he has been deprived of even the most basic
4  essential necessities of life for prolonged periods of time." ECF No. 59 at 5.  Because the
5  Court finds Petitioner has not demonstrated good cause for his release by demonstrating a
6  serious medical condition, it does not analyze the Section 3553(a) factors, including
7  whether Petitioner would pose a danger to the community.

8  **V.      CONCLUSION**

9       For the above reasons, the Court rules as follows:

10      1.    The Court **DENIES** Petitioner's Motion to Vacate, Set Aside, or Correct
11  Sentence Pursuant to 28 U.S.C. § 2255.

12      2.    The Court **DENIES** Petitioner's Motion to Reduce Sentence Pursuant to 18
13  U.S.C. § 3582.

14      3.    The Court **DENIES** Petitioner's request for an evidentiary hearing.

15      4.    The Court **DENIES** Petitioner a certificate of appealability.  A defendant is
16  required to obtain a certificate of appealability in order to appeal a decision denying a
17  motion under 28 U.S.C. § 2255.  A court may issue a certificate of appealability where the
18  movant has made a "substantial showing of the denial of a constitutional right," and
19  reasonable jurists could debate whether the motion should have been resolved differently,
20  or that the issues presented deserve encouragement to proceed further.  *See Miller-El v.*
21  *Cockrell*, 537 U.S. 322, 335 (2003).  This Court finds that Movant has not made the
22  necessary showing.

23      **IT IS SO ORDERED.**
24  DATED:    November ___ 2020
25                                        HON. ROGER T. BENITEZ
26                                        United States District Judge
27
28

-46-